In the Matter of S. Anthony LONG.

In the Matter of Michael K. PHILLIPS.

Nos. 483S129, 483S130.

Supreme Court of Indiana.

Jan. 3, 1986.

Karl J. Stipher, Brent Taylor, Indianapolis, for respondent.

Sheldon A. Breskow, Gregory M. Fudge, Indianapolis, for Indiana Supreme Court Disciplinary Comn.

PER CURIAM.

These cases are now before the Court on verified complaints for disciplinary action filed by our Disciplinary Commission. In accordance with the procedures set forth in Admission and Discipline Rule 23, these causes were heard by an appointed hearing officer who now has tendered to this Court his findings of fact and conclusions of law. Both Respondents have petitioned for review of the findings of fact and the parties have filed briefs in support of their respective positions.

In that the Respondents' alleged misconduct emanates from the same general course of events arising in their practice of law as partners and members of a professional corporation, and in that the issues now before this Court are similar, these causes are consolidated for this opinion.[1]

1. These causes were consolidated for hearing and the arguments of the parties have been joined. Our examination of the record does not disclose any conflicting interests between these Respondents.

The Respondents are each charged with engaging in conduct that compromises their professional duties in violation of Disciplinary Rules 5–105(A), (B) and (D), 8–101(A)(2) and (3) and 9–101(B) and (C); with charging and collecting excessive fees in violation of Disciplinary Rule 2–106(A); and with engaging in conduct involving dishonesty, deceit or misrepresentation, conduct prejudicial to the administration of justice and conduct which adversely reflects on their fitness to practice law in violation of Disciplinary Rules 1–102(A)(1), (4), (5) and (6) of the *Code of Professional Responsibility.* The alleged misconduct involves Respondent Phillips' service as attorney for the Warrick County Economic Development Commission in thirteen matters and Respondent Long's alleged participation in eleven of these transactions.

At the onset, it is noted that the record now before the Court consists of the findings of fact tendered by the Hearing Officer, the exhibits introduced during the course of the hearing and the pleadings of the parties. Neither party has filed a transcription of the testimony before the Hearing Officer.

■ Admission and Discipline Rule 23, Section 15(c), provides as follows:

> (c) In the event a party does not concur in a factual finding made by the hearing officer and asserts error in such finding in the petition for review, such party shall file with the petition for review a record of all the evidence before the hearing officer relating to this factual issue. Within thirty (30) days of the filing of the transcript, opposing parties may file such additional transcript as deemed necessary to resolve the factual issue so raised in the petition for review. Any transcript filed must be settled, signed and certified as true and correct by the hearing officer. The fee paid for procuring a transcript or additional transcript shall be included in the costs of the disciplinary proceeding.

This Court has previously held that, in the event a party chose not to present all of the evidence, the findings of fact tendered by the Hearing Officer would constitute the factual basis upon which the allegation of misconduct would be measured. *In re Sekerez* (1984), Ind., 458 N.E.2d 229.

In their arguments to this Court on their petitions for review, Respondents cite to testimony before the Hearing Officer in support of their position. Additionally, Respondents point to various exhibits which were considered during the course of the hearing. This does not constitute the record of proceedings contemplated under the above noted rule and is not sufficient to controvert the Hearing Officer's findings of fact.

■ Thus, the factual findings of the Hearing Officer establish the factual basis of our assessment of misconduct under the verified complaints filed in these causes. This does not mean, however, this Court must accept the conclusions of fact and law reached by the Hearing Officer. *In re Crumpacker* (1978), 269 Ind. 630, 383 N.E.2d 36.

Predicated on the findings of fact tendered in these causes, this Court now finds that both Respondents are duly licensed attorneys subject to the disciplinary jurisdiction of this Court. From February 1978 until the fall of 1978, they were partners in a law firm; since the fall of 1978, Respondents have engaged in the practice of law as members of a professional corporation. Respondent Long, at all times relevant to the matters involved in this proceeding, has served as the County Attorney and Prosecuting Attorney for Warrick County, Indiana. In 1973, at the request of the members of the Chamber of Commerce in Boonville, Indiana, Respondent Phillips assisted in creation of the Warrick County Economic Development Commission (WCEDC). At the organizational meeting of this Commission, Phillips was retained as counsel. It was further decided that legal fees for the Commission and other expenses would be paid out of the proceeds of economic development and pollution control bond issues. Long did not participate in the creation or organization of the WCEDC and did not have involvement with this agency prior to

1978. Long, however, "pinch-hit" from time to time as EDC counsel and on occasion did serve as EDC counsel when Phillips was not available.

Before the fees at issue were charged, Phillips made a diligent inquiry to determine customary charges for similar legal services and was advised that charging on a percentage basis was the common practice. Phillips obtained a "suggested schedule" of fees for municipal bond issues approved by the Indiana State Bar Association. The fees charged in the transactions which are the subject of this complaint were all calculated on a percentage basis, were based on the suggested fee and, were within the range of fees customarily charged by attorneys in Indiana for similar services on behalf of Economic Development Commissions.

In the following cases, Phillips received a fee for his legal services performed on behalf of the WCEDC in connection with a pollution control or economic development bond issue sought by private entities and approved by the WCEDC, Warrick County Council and Warrick County Commissioners:

1) On January 7, 1975, Phillips received a fee of $11,000 in connection with a $5,500,000 bond issue sought by ALCOA; he performed an estimated 150 hours of work in this transaction;

2) On November 21, 1977, Phillips received a fee of $24,495 in connection with a $10,650,000 bond issue sought by ALCOA; he performed an estimated 200 hours of work in this transaction;

3) In the winter of 1978, Phillips received a fee of $1,500 in connection with a $300,000 bond issue sought by Stahl Equipment, Inc.; he performed an estimated 50–70 hours of work in this transaction;

4) On December 21, 1978, Phillips received a fee of $13,125 in connection with a $4,375,000 bond issue sought by ALCOA; he performed an estimated 150 hours of work in this transaction;

5) On October 19, 1979, Phillips received a fee of $13,750 in connection with a $550,000 bond issue sought by Warrick Cablevision, Inc.; he performed an estimated 150 hours of work in this transaction;

6) On April 1, 1980, Phillips received a fee of $4,000 in connection with a $200,000 bond issue sought by Warrick Cablevision, Inc.; he performed an estimated 50 hours of work in this transaction;

7) On April 7, 1980, Phillips received a fee of $15,000 in connection with a $1,000,000 bond issue sought by Amax, Inc.; he performed an estimated 100 hours of work in this transaction;

8) In 1980, Phillips received a fee of $23,600 in connection with a $2,360,000 bond issue sought by Ague Development Corporation; he performed approximately 175 hours of work in this transaction;

9) On April 5, 1982, Phillips received a fee of $30,000 in connection with a $10,255,000 bond issue sought by ALCOA; he performed approximately 200 hours of work in this transaction;

10) In 1983, Phillips received a fee of $24,950 in connection with a $12,475,000 bond issue sought by ALCOA; he performed an estimated 150 hours of work in this transaction; and

11) In 1983, Phillips received a fee of approximately $10,000 in connection with a bond issue sought by Interprop Fund I; he performed an estimated 100 hours of work in this transaction.

Respondent Long shared in the fees earned in the above matters, with the exception of the fees earned on January 7, 1975, and November 21, 1977, in the ALCOA transactions; Long did not participate in any other way in these transactions, except that he attended the initial WCEDC inducement hearing and the Warrick County Council meeting on behalf of Phillips in the Amax bond issue leading to the fees earned on April 7, 1980.

In 1978 and 1979, Long received an attorney's fee of $7,000 for his services performed on behalf of the WCEDC in connection with a $375,000 economic development bond issue sought by Hunt Equipment Company and approved by the WCEDC, Warrick County Council and the Warrick

County Commissioners. One-half of this fee ($3,500) was paid to Addison Beavers who assisted in the preparation of documents and represented Hunt Equipment Company before the EDC, Council and Commissioners. Phillips shared in the fee paid Long.

Additionally, Phillips and Long, P.C., received from John Hunt a fee of $1,500 and reimbursement of $252.80 for Long's services in preparing Articles of Incorporation, preparing a deed, examining an abstract and attending zoning hearings. Again, one-half of this fee and reimbursement ($876.40) was paid to Addison Beavers for his legal representation of Hunt Equipment. Although these charges were paid out of the proceeds of the bond issue, the legal services were not performed in matters that were to be considered by the WCEDC or to be approved or disapproved by the WCEDC in its consideration of the bond issue and the payment of these charges were not contingent upon approval of such bond issue.

In the fall of 1979, Respondents received an attorney's fee of $12,000 for their services on behalf of the Warrick County EDC in connection with a $400,000 economic development bond issue sought by McCarty: Colonial Garden Center, Inc., and approved by the Warrick County EDC, Warrick County Council and the Warrick County Commissioners. This fee was paid out of the bond issue; Phillips spent an estimated 125–150 hours working on this transaction.

The Respondents never stated or implied that they were able to influence, improperly, the WCEDC. Respondents did not represent any party seeking a bond issue before the Warrick County EDC.

The method of payment of the attorney fees and the amount charged were within the range of charges normally assessed by attorneys engaging in such type of practice. Legal services for EDC attorneys vary from transaction to transaction and county to county; the complexity of the financial arrangements, the applicant's time-table, the structure and operation of the Commission, legal expertise and the number of parties involved in the transaction all are variables which ultimately affect the fee charged. Additionally, the Hearing Officer found that the Respondents exposed themselves and the assets of their firm to liability in the amount of the bond issue.

The Hearing Officer further found that both Respondents did work which should have been performed by the applicant's attorney (without further specifying the nature of their legal work) and, based on this and the above noted findings, concluded, *inter alia,* that both Respondents engaged in conflict of interest in violation of Disciplinary Rule 5–105(A), (B) and (D) of the *Code of Professional Responsibility.* The Hearing Officer cited no further violations of the *Code of Professional Responsibility* and found that the limitations set forth under I.C. 36–7–12–29(a) did not include the fee charged by EDC attorneys.

The Respondents have petitioned for this Court's review of the Hearing Officer's report and argue that there is no violation of Disciplinary Rules 5–105(A), (B) and (D). The Disciplinary Commission has responded to Respondent's assertion of error, but has not sought review of the Hearing Officer's report in any other way.

Thus, as presented by the parties, the issue in this case narrows to whether or not there has been a violation of the above noted Disciplinary Rules by reason of the conduct of the Respondents as demonstrated by the findings of fact now before this Court.

In the findings of fact now before this Court, there are two suggestions of professional misconduct. The first is a non-specific reference to the assistance of applicants by both Respondents in the submission of application papers. And the second is the representation by Long of a bond applicant in legal matters unrelated to the bond issue and the receipt of fees from the bond issue for this service when Long had represented the EDC in the transaction.

Disciplinary Rule 5–105 provides as follows:

DR 5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

The purpose of this rule is to maintain independence of professional judgment and preclude the acceptance of continuation of professional employment where such judgment might be diminished by conflicting, inconsistent, diverse or otherwise discordant interests. (EC 5–14)

■ It appears to this Court that the Disciplinary Commission is seeking a mechanical application of Disciplinary Rule 5–105. Merely because two or more individuals or entities may be involved in a transaction, conflicting interests prohibited by the rule are not established *ipso facto*. A conflicting interest, to constitute misconduct, must be of a nature to reasonably affect independent judgment.

■ An EDC attorney involves himself in a community of interests, when he represents his client, the county, in a bond project. In order to best represent his client, he cannot isolate his services to the exclusion of involvement with the other parties. An EDC attorney performs to a great extent and essentially oversees the complicated task of taking a particular bond issue through its various stages of progress. Often, the applicant and its attorney have no experience in bond financing, whereas EDC counsel has gained expertise in the area. He receives and considers the private enterprise's application, confers with bond counsel, and guides the EDC through the necessary legal resolutions. His role as "overseer" necessitates a broad involvement.

Naturally, counsel's involvement may not rise to the level of representation of both the county and an applicant. When there are numerous entities there is always the danger of adversity. An EDC attorney owes his loyalty to the interest of the county.

As the record now stands before the Court we find there is insufficient basis to conclude that the Respondents accepted employment or continued employment where the exercise of independent professional judgment on behalf of their client was likely to be adversely affected. Along the same lines, we now further find that there is no basis to find misconduct under the other Disciplinary Rules cited in the verified complaints filed in these causes.

In his report to this Court, the Hearing Officer further recommended that the percentage fee charges be declared illegal for attorneys representing Economic Development Commissions, even though the fees charged in the percent case were not found to be excessive. This issue involves policy considerations beyond the present cases. Absent the complete record upon which our Hearing Officer formulated his recommendation, we could only speculate as to the merits of this proposition. This Court, accordingly, concludes that this opinion is not

the appropriate vehicle to engage in this policy analysis.

In view of the above considerations, judgment is now entered for Respondents.

SHEPARD J., did not participate in this decision, which was reached prior to the time he joined the Court.