In the Matter of Nile STANTON.

No. 684 S 253.

Supreme Court of Indiana.

May 19, 1986.

Nile Stanton, pro se.

William G. Hussman, Jr., Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This cause is before this Court on a Verified Complaint for Disciplinary Action charging the Respondent with eleven counts of misconduct under the *Code of Professional Responsibility for Attorneys at Law.* The appointed Hearing Officer in this case now tenders his findings and conclusions that the Respondent engaged in misconduct under some, but not all of the counts. Both parties have petitioned for review. Additionally, in his petition, the Respondent makes a request for a personal appearance before this Court to answer inquiries. There being no provision for such an appearance in the rules governing review of disciplinary matters, we view Respondent's request as a petition for oral argument and hereby deny the same.

In the respective petitions for review and responses thereto, each party challenges selected findings and conclusions of fact and law. The review process in disciplinary cases involves this Court's examination not only of the Hearing Officer's findings and conclusions, but also of the entire record tendered in the case. The Hearing Officer's findings receive emphasis due to his unique opportunity for direct observation of the witnesses. *In re McDaniel* (1984), Ind., 470 N.E.2d 1327; *In re Welke* (1984), Ind., 459 N.E.2d 725. This, however, makes neither the findings nor the conclusions of fact and law binding upon this Court. *In re Long and Phillips* (1986), Ind., 486 N.E.2d 1031. Any challenges to the findings and conclusions will be considered within such review process, and any conflicts will be resolved by this Court's ultimate determination.

Upon review of all matters submitted in this case, we find generally that the Respondent, Nile Stanton, was admitted to the Bar of this State in 1973 and is, thus, subject to this Court's professional disciplinary jurisdiction.

Under Count I of the complaint now before this Court, the Respondent is charged with neglecting a legal matter entrusted to him, failing to carry out a contract for professional employment and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, conduct prejudicial to the administration of justice and conduct that adversely reflects on his fitness to practice law, in violation, respectively, of Disciplinary Rules 6–101(A)(3), 7–101(A)(2) and 1–102(A)(4), (5) and (6) of the *Code of Professional Responsibility.* Upon examination of all matters now before this Court, we find under Count I that, during 1979, Steve Hernandez, an inmate at the Indiana State Prison, met the Respondent and ultimately retained him to file a Petition for Post-Conviction Relief. Initially, the Respondent was paid $1,500 to review the transcript. On March 14, 1980, the Respondent was paid a partial fee of $3,000 to proceed with the petition. He did not file the petition, did not make an accounting as to how much, if any, of the fee was actually earned and did not refund any of the fee.

In his petition for review, Respondent argues that his representation of Mr. Hernandez did not constitute professional misconduct. Respondent asserts that the $3,000 fee was less than one-half of the $6,500 fee originally requested and that this reduced fee was accepted only on the condition that the Respondent would proceed at his own pace. Respondent further contends that Mr. Hernandez, himself, requested the delay in the filing of the petition.

Respondent's arguments are unsupported. Respondent charged and received $1,500 dollars for the purpose of reviewing the record and then further received $3,000 to proceed with the case. Respondent did

not proceed slowly, there is no evidence that he proceeded at all. In August 1981, Hernandez wrote Respondent expressing his frustrations with the delays and lack of communication, stating that he had decided against a hearing, and requesting a refund of the $3,000. With the exception of some messages and correspondence, Respondent has done nothing in this case.

Under the above noted findings, we now conclude that the Respondent has engaged in professional misconduct as charged under Count I of the complaint.

Under Count II, Respondent is again charged with violation of Disciplinary Rules 6–101(A)(3), 7–101(A)(2) and 1–102(A)(4), (5) and (6) of the Code of Professional Responsibility. Upon examination of all matters presented concerning this question, this Court now finds that on December 18, 1979, the Respondent entered his appearance on behalf of David S. Banton in the Tippecanoe Circuit Court where Banton was charged. The Respondent was paid $7,000 for representing Banton at the trial level. Banton was tried during June and July of 1981, but due to medical and other reasons, sentencing did not take place until December 22, 1982. At said hearing, the Respondent stated that he would file the motion to correct error. There were further discussions that Banton, because of indigency, would seek pauper counsel for appeal and would request a transcript at public expense. Decision on the issue of Banton's indigency was deferred because an affidavit of indigency had not been tendered or filed and there was some question as to Banton's possibility of inheritance. The Court suggested that the Respondent "look into" the latter possibility. The Respondent also advised the Court that he would like to have the transcript available for the preparation of the Motion to Correct Error and, should it not be prepared in time, that he would file an application to file a belated motion to correct error.

Thereafter, the Respondent filed two praecipies for the transcript, one on December 29, 1982 and one on January 5, 1983.

Upon Respondent's later inquiry, the Court Reporter, on March 22, 1983, responded that "[a]s I am sure you are aware, our records do not indicate that Mr. Banton is indigent. A remedy for this might be for you to file an affidavit of indigency so that the Court might then make its ruling." The Respondent filed nothing more on behalf of Banton, although in April, 1983, he advised Banton to file a petition to proceed as a pauper. Banton, proceeding pro se, was found to be indigent and a transcript was ordered for him at public expense. Later, upon Banton's "Motion for Order Compelling Trial Counsel to Produce and Deliver all Documents" and the Court's order to appear and show cause, the Respondent forwarded Banton's file to him on February 17, 1984. Banton proceeded pro se and filed his belated motion to correct error.

The Respondent contends that any delay in his filing of the motion to correct error was caused by the court reporter who did not file the transcript until July 25, 1984. We are not persuaded. The findings show that the Respondent was aware of and anticipated the inability of his client to pay for a transcript. The Respondent insisted on one, yet, at the same time, abandoned Banton to his own devices to seek indigency status. Also, Respondent's argument proceeds from premise that a transcript was necessary for the filing of the Motion to correct error. The time constrains and procedural sequences of Trial Rule 59 do not anticipate the preparation of a transcript. The record gives us little to convince us that, in this case, where the Respondent acted as trial counsel, the transcript was at all necessary for the preparation of a motion to correct error.

These considerations and the findings of fact convince us that the neglect exhibited in the case is not at all justified. Accordingly, we conclude that the Respondent did neglect a legal matter entrusted to him, failed to carry out a contract of employment and engaged in conduct that is prejudicial to the administration of justice and conduct that adversely reflects on his

fitness to practice law, all in violation of Disciplinary Rule 6–101(A)(3), 7–101(A)(2) and 1–102(A)(5) and (6) of the *Code.*

■ Under Count III, the Respondent is charged with charging a clearly excessive fee, with failing to refund an unearned fee, neglecting a legal matter, failing to carry out a contract of employment, engaging in conduct involving fraud, deceit or misrepresentation, conduct that is prejudicial to the administration of justice and conduct that adversely reflects on his fitness to practice law, in violation of Disciplinary Rules 3–106, 2–110, 6–101(A)(3), 7–101(A)(2) and 1–102(A)(4), (5) and (6). These charges arise out of an incident during which the Respondent, in anticipation of being hired to file a petition for post-conviction relief on behalf of an inmate, had some meetings and incurred expenses relating to the case. He was not hired because an agreement between him and the inmate's brother could not be reached as to attorney's fees. Though the Respondent declined to accept employment for the proposed amount, he retained $500 which the brother had tendered as an expression of "good faith". The Hearing Officer found that the Respondent was enticed into certain actions and did perform services. The Hearing Officer concluded that the Respondent did not, by clear and convincing evidence, violate the Disciplinary Rules as charged. We agree that the evidence is insufficient to prove misconduct under this count.

The charges under Count IV arise out of Respondent's withdrawal from a post-conviction matter prior to a final determination on the petition for post-conviction relief for which the Respondent was paid in advance. The Hearing Officer concluded that the withdrawal, under the facts, was permissible and that there has been no clear and convincing proof of the violations charged. We agree with his conclusion and find that the evidence is not sufficient to prove misconduct.

In Count V, Respondent is charged with revealing confidences and secrets of his client and using confidences and secrets of his client to the disadvantage of the client,

in violation of Disciplinary Rule 4–101; damaging a client during the course of representation, in violation of Disciplinary Rule 7–101(A)(3); engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Disciplinary Rule 1–102(A)(4); improperly withdrawing representation, in violation of Disciplinary Rule 2–110(A), as then in effect; failing to carry out a contract of professional employment, in violation of Disciplinary Rule 7–101(A)(2); charging a clearly excessive fee, in violation of Disciplinary Rule 2–106(A); and engaging in conduct which is prejudicial to the administration of justice which adversely reflects on his fitness to practice law, in violation of Disciplinary Rules 1–102(A)(5) and (6) of the *Code of Professional Responsibility.* Upon review of all matters presented concerning this question, this Court now finds that the Respondent was contacted by Bruce E. Jones with reference to criminal charges pending in the Madison Superior Court, in the Madison County Court and in the Monroe Superior Court. They entered into a fee agreement whereby Jones was to execute a deed to a piece of real estate to the Respondent and was to pay the Respondent $500 per month during the course of his representation. Jones paid the Respondent the $500 per month beginning in April, 1983, and continuing through September, 1983. In addition, the Respondent received from Jones, a registered Great Dane puppy valued at $500, but Jones did not execute the deed in question. Thereafter, the relationship between the Respondent and Jones became strained with both parties proposing their versions as to the reasons. On December 7, 1983, the Respondent filed a "Notice of Withdrawal of Counsel" in the case in the Madison Superior Court. Therein the Respondent stated that Jones "has engaged in deceptive acts towards his counsel"; the Respondent stated that Jones had failed to pay him; that Jones had already obtained his file from the Respondent; that Jones was "manipulating the courts" by obtaining repeated continuances without valid reason. The "Notice" was verified and the Respondent affirmed that

the factual allegations are true and correct. This, in fact was not the case. Jones had paid some, though not all, of Respondent's fee and Jones had obtained some, but not all, of his file.

■ It is Respondent's contention that he was justified and obligated to disclose what he professes to be the truth, that his client was untruthful and was manipulating the courts. This argument is not supported by the evidence. Respondent's statements in the "notice" were vindictive, self-serving and misrepresented the facts. In that regard, we conclude that the Respondent violated Disciplinary Rule 1–102(A)(4) by engaging in conduct involving misrepresentation. Respondent's conduct prejudiced and damaged his client and is in violation of Disciplinary Rule 7–101(A)(3); it is also in violation of Disciplinary Rule 4–101 in that it revealed matters which were embarassing and likely to be detrimental to the client. We conclude further that the Respondent withdrew without permission and did not take steps to avoid prejudice to the client, in violation of Disciplinary Rule 2–110(A), as then in effect. This conduct, as a whole, violates Disciplinary Rules 1–102(A)(5) and (6) of the *Code.*

Count VI again charges the Respondent with neglecting a legal matter, improperly withdrawing representation, charging an excessive fee and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, conduct prejudicial to the administration of justice and conduct which adversely reflects on his fitness to practice law in violation of Disciplinary Rules 6–101(A)(3), 2–110, 2–106 and 1–102(A)(4), (5) and (6) of the *Code of Professional Responsibility.* This Court now finds under this charge that the Respondent represented Donald Lock in a murder trial in 1977 and 1978 during which Lock was convicted by a jury. On December 9, 1979, the Respondent met with Lock and Mrs. Gene Oliver Jennings and discussed Respondent representing Lock in a post-conviction relief matter. Mrs. Jennings was not related to Lock. On December 10, 1979, she retained the Respondent to represent Lock,

and she delivered to the Respondent a cashier's check for $7,000. On December 12, 1979, the Respondent wrote a letter to Lock, with a copy to Mrs. Jennings, describing his proposal for the representation, and informing Lock that he (the Respondent) would perform "casual research" and await developments in the law. On March 28, 1980, Mrs. Jennings had another $7,000 transferred to the Respondent's bank account. During May of that year, Lock wrote the Respondent advising that he no longer wished to pursue his post-conviction remedies and requesting that the Respondent pay Lock $12,500 of the fee and retain $1,500. Mrs. Jennings then advised the Respondent that she had been misled by Lock and demanded return of the money paid by her. Thereafter, Lock's wishes vacilated between requests that the Respondent go forth with the case and requests for return of the fees, at times to Mrs. Jennings and at times to Lock himself. The Respondent refused to testify as to the nature of any work he may have performed on behalf of Lock because Lock claimed the attorney-client privilege. Additionally, there was no evidence of business or other records of any expenses incurred, time spent or work performed by the Respondent on Lock's case. There was no other evidence that the Respondent actually performed any ostensible function with the exception of unspecified meetings with a psychiatrist and other corrections employees concerning prison programs for Lock. The Respondent never filed a petition for post-conviction relief.

During the summer of 1981, the Respondent advised Mrs. Jennings that he no longer represented Lock but he did not refund any portion of the $14,000. Mrs. Jennings requested that the Respondent assist her husband before the clemency board. The Respondent arranged to have a hearing, drafted a petition and proceeded with the work. However, Mr. Jennings died in July of 1981, prior to any hearing. Again, Mrs. Jennings requested a return of unearned fees. The Respondent agreed to refund $5,000 but only refunded $1,000. Mrs. Jennings then requested that, for the unre-

funded fees, the Respondent represent Walter Peters in post-conviction matters. The Respondent agreed to do so and reviewed some documents and made some contacts; he took no other action on Peters' behalf. In September of 1983, Peters and Mrs. Jennings requested that the Respondent withdraw and return unearned fees. Again, the Respondent failed to return any fees nor did he provide any accounting.

The Respondent insists that from the initiation of the relationship, his sole duty and obligation was to Lock, the client, who was fully satisfied with Respondent's performance. The Respondent further contends that he fully earned the $14,000 by his work and that he owed nothing to Mrs. Jennings; any concession or accommodation he made to her subsequently were simply gestures of good will because he felt she was a very nice person.

■ This interpretation of the findings fails to persuade us. Lock's assessment of the Respondent's professional performance is of little consequence in this instance. Lock may not have been as satisfied with Respondent's performance had it been he who paid $14,000 for "casual research". Respondent's performance is measured by standards set out by this Court for professional competence and ethics, not by Mr. Lock's opinion. The findings under this charge convince us that Respondent's conduct is violative of the *Code*. He neglected a legal matter entrusted to him, in violation of Disciplinary Rule 6–101(A)(3), and he failed to refund unearned fees paid in advance, in violation of Disciplinary Rule 2–109(A)(3) (as renumbered January, 1984). The result of this conduct was that his fee was clearly excessive for the work he performed and is, thus, in violation of Disciplinary Rule 2–105(A) (as renumbered January, 1984). The Respondent further engaged in conduct involving misrepresentation and conduct which adversely reflects on his fitness to practice law, in violation of Disciplinary Rule 1–102(A)(4) and (6) of the *Code*.

Under Count VII, Respondent is charged with the same *Code* violations as set out under Count VI and further charged with failing to carry out a contract of employment thereby violating Disciplinary Rule 7–101(A)(2) of the *Code of Professional Responsibility*. This Court now finds that Rick Griffin retained the Respondent to represent Griffin in criminal charges pending in the Fayette Circuit Court where he was a co-defendant. The Respondent was paid $1,000 in May of 1980, $5,000 in November of 1982 and another $5,000 in May of 1983. The Respondent had quoted a flat fee of $15,000 for the representation. The Respondent appeared at the arraignment, filed two motions for continuances and appeared for a possible plea agreement. Correspondence and contacts with co-defendant's counsel and the client dealt primarily with Respondent's request for fees. The Respondent did little else on behalf of his client. At a scheduled hearing on January 16, 1984, Griffin requested approval to dismiss the Respondent as his attorney and to have co-defendant's counsel proceed with Griffin's case. The Respondent had failed to appear at this hearing and an earlier hearing and had not been in contact with Griffin. Thereafter, Griffin called the Respondent and requested the return of unearned fees. The Respondent has made no refund.

■ The Hearing Officer concluded that the entire tenor of Respondent's explanation was that he would not do the work because his quoted fee had not been paid in full. The foregoing findings fail to show that the work done on the case warranted the fee already received by the Respondent. It is not surprising that the full balance of the fee was not forthcoming. The foregoing findings establish that the Respondent neglected a legal matter entrusted to him and failed to carry out a contract of employment, in violation of Disciplinary Rules 6–101(A)(3) and 7–101(A)(2). By failing to refund unearned fees, the Respondent further violated Disciplinary Rule 9–102(B)(4) and Disciplinary Rule 2–109(A)(3) (as renumbered January, 1984). The effect of such conduct rendered the fee already received by the Respondent clearly

excessive and in violation of Disciplinary Rule 2–105(A) (as renumbered January, 1984). His conduct, as a whole, is prejudicial to the administration of justice and adversely reflects on his fitness to practice law, in violation of Disciplinary Rule 1–102(A)(5) and (6) of the *Code of Professional Responsibility*.

██ Respondent is charged under Count VIII with failing to refund promptly any fees paid in advance, failing to deliver on request funds belonging to a client and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, conduct prejudicial to the administration of justice and conduct which adversely reflects on his fitness to practice law, in violation, respectively, of Disciplinary Rules 2–110, 9–102(B)(4) and 1–102(A)(4), (5) and (6) of the *Code of Professional Responsibility*. Under this Count, we now find that in May of 1981, Lowel Maynard paid to the Respondent $2,500 as advance payment for legal services to be rendered. Norman Flick also brought the Respondent $5,000 in cash. Maynard and Flick were indicted and an additional $5,000 was brought to the Respondent. The Respondent never entered an appearance for Maynard and advised him that he could not represent both, Flick and Maynard, because of a possible conflict. Maynard agreed and requested the return of unearned fees. The Respondent has failed to do so. From the foregoing findings we conclude that the Respondent failed to promptly refund unearned fees, in violation of Disciplinary Rule 2–109(A)(3) (as renumbered January, 1984) and failed to pay to the client funds which the client is entitled to receive, thereby violating Disciplinary Rule 9–102(B)(4).

The charges under Count IX involve similar conduct, the receipt of advance flat fees and failure to account for and refund the allegedly unearned portion of such fees. We agree with the Hearing Officer's conclusion that, under the particular circumstances of this Count, there is insufficient evidence to prove the misconduct charged.

██ Under Count X the Commission has incorporated the factual allegations found in all of the preceeding charges and now charges that the Respondent engaged in a "pattern of conduct" in violation of Disciplinary Rule 1–102(A)(4), (5) and (6). Here, the Commission more fully advances its contention that Disciplinary Rules 9–102(A)(2) and 9–102(B)(3) require that flat fees paid in advance for criminal defense work must be treated as all other funds belonging to a client and deposited in a separate trust account until earned. However, neither under this count nor anywhere else in the complaint is the Respondent actually charged with violating Disciplinary Rules 9–102(A)(2) or 9–102(B)(3) by failing to preserve the identity of clients' funds or failing to maintain complete records. The lack of accounting and records has been noted by this Court but only by way of review of evidence of record which would tend to support Respondent's proposed defense that advance fees were fully earned. In that regard, Disciplinary Rule 2–109(A)(3) specifically and adequately spells out the duty of a lawyer in such situations. We have already found that Respondent's conduct under several of the charges is in violation of this latter rule. In the past, this Court has often considered repetitive misconduct, but only in our assessment of a sanction. This Count, in effect, charges the Respondent with the same violations twice, once individually under the respective Counts and later cumulatively, under this Count. In that some of the factual allegations have been found not to establish misconduct while others have already served as basis of violations, we find that this charge is redundant and, as such, should be dismissed. *In the Matter of Sekerez* (1984), Ind., 458 N.E.2d 229.

It is alleged under Count XI that the Respondent engaged in misconduct by advising a client to enter a plea of "guilty" with the understanding and intent that such a plea will be challenged on a Petition for Post-Conviction Relief as being coerced or induced by an earlier erroneous ruling of

the trial court. The Hearing Officer concluded, and we agree, that the evidence was not sufficient to prove misconduct under this charge.

We have concluded that under six of the eleven counts in the Complaint the Respondent engaged in misconduct. We must now determine the appropriate sanction. As part of our deliberation, we consider the nature of the violations, the specific acts of the Respondent, its impact on the public, this Court's responsibility to preserve the integrity of the Bar and the risk, if any, to which we will subject the public by permitting the Respondent to continue in the profession or be reinstated at some future date. *In re Duffy* (1985), Ind., 482 N.E.2d 1137; *In re Hailey* (1985), Ind. 473 N.E.2d 616; *In re Ewers* (1984), Ind. 467 N.E.2d 1184. The specific acts here indicate that the Respondent routinely charged and received substantial fees in advance. At the dissolution of the attorney-client relationship, often due to Respondent's delay and neglect, the Respondent refused and failed to render any account of his services or to refund any of the unearned fees. Once in his hand, the fees were kept by Respondent as his own, regardless of whether or not his performance warranted payment. Whatever the guise, such conduct represents an insidious form of misuse of clients' funds that is just as abhorrent as more obvious misuses. The alarming frequency of the practice suggests a pattern of conduct and a method of operation used by the Respondent which cannot be allowed to continue. In light of our findings, conclusions and, with the foregoing considerations in mind, we further conclude that in order to protect the public from further acts of misconduct, the strongest sanction available is warranted. It is, therefore, ordered that the Respondent, Nile Stanton, be and he hereby is disbarred from the practice of law in Indiana.

Costs of this proceeding are assessed against the Respondent.