### In the Matter of Florence Anne BRIGGS.

### No. 783S262.

Supreme Court of Indiana.

Jan. 13, 1987.

Florence Anne Briggs, Flora, pro se.

David B. Hughes, Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This case is before us on a Verified Complaint for Disciplinary Action filed by the Indiana Supreme Court Disciplinary Commission. It is a companion case to *In re William Briggs* [502 N.E.2d 879] which involves Respondent's law associate and spouse. After a lengthy joint hearing, the Hearing Officer, the Honorable Douglas B. Morton, has submitted his excellent findings, conclusions of law and recommendation in this case. The Respondent and the Commission have challenged different aspects of the Hearing Officer's report and have petitioned for review of the same. In her petition for review the Respondent also requests to appear before this Court for the purpose of oral argument. Such request is hereby denied. She also takes issue with several statements contained throughout the report's 43 pages. Such issues will be resolved through this Court's determination of the ultimate findings and conclusions.

We have examined all matters presented and now find generally that the Respondent is a member of the Bar of this state, having been admitted in 1958 and is, therefore, subject to this Court's jurisdiction. She is engaged in the practice of law with her spouse, William Briggs. Though never under a formal partnership agreement, they held themselves out to the public as a partnership operating as Briggs and Briggs.

By way of background, we find that the Respondent was aware that William Briggs began representing Mary Bernice (Kate) Smoker during the 1960's. Smoker was an elderly, childless widow with an estate of approximately 292 acre farm and $150,000 cash. Except for a few minor bills, Smoker did not pay for the representation but, in time, entered into an oral agreement with William Briggs for a lifetime legal service fee of $10,000. The Respondent was also conversant with the terms of a will prepared by William Briggs, whereby Smoker left William Briggs a specific bequest of $1,000. The will further established an educational trust specifying the Briggs' son, Winston, as a major beneficiary under the trust which would have paid for all college and post graduate school, and named the Respondent as co-executor and attorney for the trust.

Thereafter, Smoker's mental and physical health declined and she was hospitalized in October of 1976. Though she was released from the hospital, her health remained marginal. On November 9, she met with William Briggs at her home and executed a codicil to her will nominating William Briggs as guardian, should one become necessary, and formalized the lifetime services contract by written agreement and by funding a $9,000 joint certificate of deposit in her and William Briggs' names. Thereafter, Smoker was again hospitalized and, upon her cousin's petition, a temporary guardianship was commenced on November 24, 1976, with William Briggs as guardian.

By January, 1977, Kate Smoker made a miraculous recovery, and her physician found that her physical and mental problems were in a state of "remission". At

this time Smoker became aware of the guardianship and professed no recollection of making the joint certificate of deposit.

Notwithstanding her recovery, the guardianship was made permanent on January 13, 1977. During the next month, the long standing relationship between Smoker and William Briggs deteriorated. In anticipation of large cash expenditures for Smoker's care, William Briggs had negotiated cash leases for Smoker's farm, a practice she strongly disapproved. Additionally, Smoker was exceedingly unhappy and frustrated with not having control of her business affairs. She was particularly incensed with William Briggs when he, correctly, refused to give her the key to her safety deposit box. However, he also taunted her by displaying the key and stating, "you don't like authority, do you?" Though not a participant, the Respondent was present during this event. Immediately after termination of the guardianship, Smoker executed a codicil to her 1977 will reaffirming its terms.

Kate Smoker set out to retain the services of Attorney R. Adrian Marks in order to terminate the guardianship. Marks had her examined by two physicians, both of whom found her to be able to handle her own affairs, although, they found, she may be in the early stages of senility and showed some confusion.

At some point thereafter, William Briggs became aware that Smoker had sought the services of another attorney. This resulted in strong animosity between William Briggs, Marks and Bobby Ritchy, a friend of Mrs. Smoker who had assisted her in retaining attorney Marks. This also precipitated the filing of petitions by William Briggs (1) requesting that the court issue a temporary restraining order restraining certain persons, particularly Bobby Ritchy, from interfering with the ward, Smoker; (2) objecting to the filing of any pleadings allegedly signed or authorized by the ward; and (3) seeking a protective order against his producing any documents, should such allegations be made.

Upon Smoker's direction, on February 14, Marks presented a Petition to Remove the Guardian. On February 18, 1977, the Respondent, together with William Briggs, attended a pre-hearing conference on the matter. William Briggs and the Respondent had a lengthy conversation as to the advisability of his filing a "Petition to Terminate" the conservatorship based on Smoker's now apparent competency. William Briggs decided to file the petition against Respondent's counsel. It contained William Briggs' statement, without reservation, that the conservatorship should be terminated. At this juncture, the Respondent became a more active participant.

On February 23, 1977, Smoker executed a new will prepared at her direction by Marks.

After the filing of the "Petition to Remove" by Marks and the "Petition to Terminate" by William Briggs, William Briggs, with Respondent's assistance, began delaying and resisting action on these petitions. On February 23, Marks sent a letter to William Briggs agreeing to the granting of Briggs' "Petition to Terminate"; William Briggs did not answer the letter. Thereafter, Marks and Power, Smoker's other attorney, contacted William Briggs by telephone to discuss the same, but William Briggs refused to agree to the granting of his own petition. In a letter written on May 2, 1977, to Judge Mauro, Special Judge in the guardianship case, William Briggs stated that he had informed Power that "... before I, myself, would agree to any order of any nature, including a dismissal of their Petition to Discharge, etc., there would have to be a finding that certainly I had NOT mismanaged the funds of Mrs. Smoker in any way." The Respondent drafted this letter for William Briggs' signature.

Between March 9 and 15, 1977, three physicians filed their written reports with the Court in which each of them affirmed that Kate Smoker was of sound mind and capable of managing her own affairs. On April 12, 1977, failing to get an agreed entry from William Briggs to his own peti-

tion, Smoker's attorneys filed a reply to the Petition to Terminate which admitted that the guardianship should be terminated. In a motion for summary judgment filed on April 19, Smoker's counsel pointed out that the parties and all physicians were agreed that Smoker was mentally competent. The Court then entered an order limiting the hearing to the issues raised by the "Petition to Terminate" and informed counsel that the court will take judicial notice of the physician's reports so that they need not testify. William Briggs filed his objection to this order arguing strenuously that the granting of his Petition to Terminate without a hearing on the Petition to Remove would do "irreparable harm" to him because the Petition to Remove "has cast doubt on the character of William J. Briggs by innuendo." These objections and an Affidavit and Response were prepared by William Briggs and reviewed and concurred in by the Respondent.

During this period of time Smoker suffered great emotional distress due to the continuation of the guardianship and her own inability to gain control over her property. As noted by the trial judge and the hearing officer, the termination of a conservatorship where three physicians unanimously agree as to competence is a simple matter. However, in this instance, William Briggs treated this as an adversary proceeding for his own benefit and vindication, all the while being fully aware of the emotional harm beset upon Smoker. The Respondent assisted William Briggs in this action.

On May 26, 1977, the guardianship was terminated. The termination order directed that Smoker could take over her affairs immediately, that William Briggs was to file his final report within two weeks, that $2,000 was to be transferred to Smoker for her immediate use, and that all her papers and Will were to be made available for her at the time of the final report. Further confrontations, delay and strife accompanied the transfer of the ordered matters, though, in the end, the majority were turned over.

With the filing of his Guardian's Final Report, William Briggs also objected to his having to file a claim for services, claiming the contract with Smoker for lifetime services. His objections were overruled, and he filed a claim for $17,585 for serving as guardian for a period of six months and two days. The amount of the claim was an attempt to assure that the $10,000 lifetime services contract would be paid.

In August, 1977, the Respondent made a request to withdraw from the case, but remained active nonetheless. William Briggs also employed attorney Joseph T. Ives, who entered his appearance in the guardianship matter and began participation in the disciplinary matter as well.

From May, 1977 to 1979, Kate Smoker managed her own affairs, but there was a gradual erosion of her condition. In anticipation of further deterioration, Smoker's deposition was taken for the William Briggs' disciplinary case. The Respondent was present and took Smoker's deposition for use in the guardianship case. On November 21, 1979, two weeks prior to the commencement of the trial of the final report in the conservatorship, Kate Smoker died.

On November 26, 1979, William Briggs, in consultation with the Respondent, filed sworn objections to the probate of any Smoker will executed subsequently to February 24, 1970. Respondent's and William Briggs' ultimate purpose in contesting the 1977 Smoker will and codicil was to preserve their family's benefits contained in the earlier will drafted by William Briggs. Smoker's competence was not challenged; the will contest was based on alleged undue influence in the execution of the 1977 will, on which issue the Respondent and William Briggs felt they could prevail.

Attorney Ives did not significantly participate in the guardianship case and eventually dropped out. The Respondent became lead counsel in the guardianship trial. She and Smoker's attorneys, Marks and Power, were all called as witnesses in the guardianship proceeding which was held over a period of thirty days from December

3, 1979, to August 7, 1980. Though Smoker's Petition to Discharge was not an issue because the guardianship had been terminated, substantially all allegations therein were litigated during this trial. The trial court approved the final report except for the guardian's fees and attorney fees, all of which were denied based upon apparent conflict of interest; William Briggs' claim to the $9,000 certificate of deposit was set aside and the underlying contract for lifetime legal services was rescinded upon a theory of undue influence; Smoker's administrator's claim against William Briggs for misfeasance in managing the estate was denied. Included in the latter argument was an attempt to recover for psychological abuse and emotional strain, but the court held that Smoker's death rendered any such issue moot. William Briggs' claim for defamation allegedly caused by pleadings filed on July 14, 1977, was upheld, but he received nominal damages of $1.00. The trial court further concluded that no oral contract nor implied contract for legal services had existed prior to November 9, 1976, that the prior services were rendered gratuitously and that fees could not be recovered on a quasi-contractual basis. Except for reversal of a $25 fee awarded to William Briggs and an order that appellate attorney fees be paid, the Court of Appeals affirmed the trial court. Rehearing and transfer were subsequently denied.

The Respondent and William Briggs were also attorneys of record for the plaintiffs in the will contest; in all respects the Respondent acted as lead counsel during this trial, knowing that her partner, William Briggs, would be a most significant witness.

On October 29, 1980, the Respondent wrote a letter to opposing counsel of record concerning a possible settlement of the will contest. On November 8, 1980, the Respondent conveyed to Charles R. Vaughn, attorney for defendant beneficiaries, the Burlington United Methodist Church and the Burlington Cemetery Association, a settlement offer for $29,250, such sum being three fourths of estimated attorney fee expenses the Estate would expend in defending the Briggs claim. The Respondent contacted the special judge in the will contest to inquire whether she could directly contact parties to the will contest to determine if her settlement had been conveyed. The special judge advised her that she should not contact persons holding "decision making" positions.

Shortly thereafter, William Briggs contacted Reverend Arthur A. Schenck. The Reverend Schenck was a member of the Burlington United Methodist Church and a member of the church's Charge Conference and Administrative Board, the bodies within the church which had decision making authority with respect to any settlements. William Briggs wanted the settlement to be communicated to the Church Board; he could not present the offer himself because the attorney for the church had forbidden such presentation. William Briggs informed Reverend Schenck that he had a claim for $17,000 for services performed for Kate Smoker and that he would dismiss the will contest if he was paid $29,000. The entire conversation occurred in Respondent's presence and with her knowledge, consent and active assistance. The Chairman of the Administrative Board of the church rejected the idea of presenting the settlement.

An eleven day trial to a jury ensued and, after eight hours of deliberation, the jury returned a verdict against the Respondent, effectively upholding Smoker's 1977 will.

▇ The essential challenges in both Respondent's and the Commission's petitions for review are directed toward certain of the Hearing Officer's conclusions of law. The Respondent further claims that constitutional infirmities in the proceeding require dismissal of the charges and imposition of no sanction. The Hearing Officer has addressed the numerous constitutional issues raised by the Respondent at hearing and has made extensive findings as to those of colorable merit. On review before us now, the Respondent claims that she was denied a fair hearing because one of

her witnesses, her former secretary, Bertha Wolfe, was unable to appear at the hearing due to illness. The Hearing Officer found that the Respondent had failed to explain the extent of the illness that apparently led to the absence; further, that the Respondent indicated that the testimony would have been favorable as to Respondent's character and professional capacity, but in other respects would have been cumulative. The Respondent brings nothing more to this review. In light of the findings, we conclude that the not fully explained absence of the witness did not render the hearing unfair nor did it otherwise prejudice the Respondent.

Respondent next claims that the Hearing Officer failed to follow the "clear and convincing" standard of proof. This contention is simply unsubstantiated and without merit. The Respondent claims further prejudice alleging that certain findings made by the Hearing Officer are irrelevant to her case because they relate solely to her husband. She contends that such findings were included due to the consolidation of the two cases at hearing, an action opposed by the Respondent. The findings at issue relate to the fact that William Briggs brought an action in the Federal District Court for the Northern District of Indiana against this Court, the Commission, and its attorneys. The Respondent was not a party to such action. The Hearing Officer in this case and *In the Matter of William Briggs,* exerted inordinate efforts to present this Court with thorough, extensive and informative findings. The Respondent's argument fails to convince us that the findings at issue are irrelevant or that they are in any way prejudicial to her case.

■ Upon review of the specific charges, we find that the Respondent is charged with violating Disciplinary Rule 5–102(A) of the *Code of Professional Responsibility* by acting as counsel for William Briggs when it is obvious that she and her partner/spouse would be called as witnesses. The Hearing Officer concluded that the Respondent's conduct is not in violation of Disciplinary Rule 5–102(A). The Commis-

sion now challenges such conclusion arguing that, under the plain terms of the rule, a lawyer may not appear in a proceeding in which he or a lawyer in his firm will be called as a witness. We are not persuaded by the Commission's contention. Though perhaps not advisable, a lawyer is free to represent himself in any proceeding. As such, he would, by necessity, be a witness, an advocate and an obviously interested party. Any prejudice or undue weight which his testimony could conjure in the mind of the trier is counter balanced by the obvious self interest being served. In the instance before us, the marital relationship, the close professional association and the potential familial benefits which could be gained, if successful, rendered the client's (Mr. Briggs') interests indelibly associated with those of the attorney/spouse. Under such circumstances, we agree with the Hearing Officer's conclusion that the Respondent's conduct did not constitute misconduct under Disciplinary Rule 5–102(A). In light of our conclusion, Respondent's arguments relative to this charge are moot.

■ The Respondent is also charged with violating Disciplinary Rule 7–104(A)(1) by causing William Briggs to communicate a settlement offer to a party she knew to be represented by an attorney. The Respondent claims that her attorney, who passed away prior to trial, had interviewed the material witness, the Reverend Schenck, obtained contradicting information, and could have appeared before the Commission to dissuade them from filing this charge. However, she claims, that this opportunity was missed because the Commission neglected to notify her that she could appear before them. Respondent's argument is a tale of speculation unsubstantiated by any record; as such, we find it to be untenable. Accordingly, we conclude that the Respondent's conduct relative to this charge is in clear violation of Disciplinary Rule 7–104(A)(1) of the *Code.*

The Respondent is further charged with assisting William Briggs in unreasonably delaying the termination of the conservatorship of Mrs. Smoker, thereby allowing

her personal and firm's interests to adversely affect her professional judgment on behalf of the ward, in violating Disciplinary Rule 5–101(A). She is also charged with engaging in conduct prejudicial to the administration of justice which adversely reflects on her fitness to practice law, in violation of Disciplinary Rule 1–102(A)(1), (2), (5) and (6) of the *Code*.

The Respondent contends that no grievance was ever filed against her charging her with this delay and that she had no notice of this charge until the Verified Complaint was filed against her. Due to this lack of notice, the Respondent claims prejudice because she missed an opportunity to question and depose Mrs. Smoker relative to this issue, prior to Mrs. Smoker's death.

We find, as did the Hearing Officer, that in July of 1977, a grievance was filed alleging that William Briggs engaged in professional misconduct. The Briggses were notified and they submitted a response. This resulted in the filing of a complaint against William Briggs in October, 1978. Because of the many matters involved in the grievance remained the subject matter of pending litigation, the Commission's attorney and James Stewart, William Briggs' attorney at the time, agreed to forego proceedings in the disciplinary case until the guardianship and will contest trials were over. On April 9, 1981, a voluminous new set of grievances were filed against William Briggs and the Respondent based upon their actions in the guardianship and will contests. The grievance document was approximately 100 pages in length. The Respondent was notified on May 19, 1981, that the matter was being assigned to Attorney Hughes for investigation. There was a response from the Respondent and William Briggs of approximately two volumes. After further investigation and review, on September 10, 1982, the Commission, having determined that there is reasonable cause to believe the Respondent was guilty of misconduct which would warrant disciplinary action, by a unanimous vote, authorized the filing of a complaint against her. The complaint was filed on

July 19, 1983. The Respondent states in her brief that a grievance was filed against her in July, 1977, but that it did not allege the delay charged hereunder. She further states that in July, 1978, the grievance was found to be without merit. There is nothing in the sequence of events set out above which would support Respondent's contentions, and she provides no record which arguments or contradicts the findings. We, thus, find this contention meritless.

In her second challenge to this charge, the Respondent insists that, due to a defamatory attack on her husband's integrity, her actions as his counsel were justified and simply constituted vigorous representation. She contends that because this charge fails for constitutional infirmity, she, in effect, is being punished for being the wife of William Briggs.

Her argument is untenable. The Respondent assisted William Briggs in a concerted effort to intentionally delay the termination of Smoker's conservatorship which they acknowledged should be terminated. At the same time the Respondent was fully aware of the personal interests being served by the delay, the extreme emotional strain caused to the ward and that her actions served to frustrate the orderly administration of justice. In light of these considerations and the findings of fact, we find that the Respondent violated Disciplinary Rule 5–101(A) and 1–102(A)(5). We further agree with the Commission's position that the Respondent's conduct reflects adversely on her fitness to practice law and is in violation of Disciplinary Rule 1–102(A)(6).

The Respondent is also charged with violating Disciplinary Rule 7–102(A)(1) and 1–102(A)(1), (2), (5) and (6) by contesting, in bad faith, Smoker's final will, in order to preserve her family's interests. The Disciplinary Commission has challenged the Hearing Officer's conclusions that the Respondent's conduct did not constitute a violation under this charge. They contend that the Respondent should not be allowed to seek to recoup benefits conferred upon

her family by a will drafted by her partner/husband under circumstances constituting professional misconduct. Disciplinary Rule 7–102(A)(1) provides that a lawyer shall not:

"File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

The Hearing Officer found that the will contest was motivated in part by retaliatory feelings and that the decision to proceed was made after an adverse determination in the guardianship proceeding; nonetheless, the Respondent believed that they could prevail in the will contest based on the issue of undue influence. Thus, the issue before us is whether Respondent's actions relative to the will contest were violative of the foregoing rule or otherwise constitute conduct prejudicial to the administration of justice or conduct that adversely reflects on her fitness to practice law. Upon review of the findings, we agree with the Hearing Officer's conclusion that the evidence is not sufficient to support a finding of misconduct under the charge.

Lastly, the complaint charges that, as the law partner, spouse, assistant and legal counsel to William Briggs, the Respondent's actions, as set out above, constitute a course of conduct intentionally designed and calculated to damage her firm's former client and ward, in violation of Disciplinary Rule 1–102(A)(1), (2), (5) and (6). This charge restates the allegations and violations already addressed in the previous charges. We, therefore, find no misconduct under this charge.

Upon concluding that the Respondent engaged in misconduct, this Court must now determine the appropriate sanction. In making such assessment, this Court examines the nature of the violation, the specific acts of the Respondent, the impact on the public, this Court's responsibility to preserve the integrity of the Bar and the risk, if any, to which the public will be submitted if the Respondent is permitted to continue in the profession or be reinstated at some future date. *In re Stanton* (1986) Ind., 492 N.E.2d 1056; *In re Duffy* (1985), Ind., 482 N.E.2d 1137; *In re Hailey* (1985), Ind., 473 N.E.2d 616. Despite her many years in practice the Respondent appears unable to make a distinction between the professional duty owed by her firm to the ward and the financial and emotional interests of the Briggs family. Throughout her involvement in this matter, the Respondent has been blinded by self interest and desire for vindication. While the Respondent may not have been the primary moving force in this unfortunate episode, she did lose sight of her professional obligations. In light of the foregoing findings of fact and these considerations, we conclude that a period of suspension is warranted under the circumstances of this case.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Respondent, Florence Anne Briggs, is suspended from the practice of law for a period of not less than one (1) year beginning February 16, 1987.

Costs of this proceeding are assessed against the Respondent.

DICKSON, J., not participating.