In the Matter of Steven J. MOERLEIN.

No. 1085S399.

Supreme Court of Indiana.

April 6, 1988.

Robert F. Gonderman, Sr., South Bend, for respondent.

Gregory M. Fudge, Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This case is before us on a seven-count verified complaint for disciplinary action charging the Respondent with several acts of misconduct. After a hearing thereon, the Hearing Officer appointed pursuant to Admission and Discipline Rule 23 has submitted his report of findings of fact and recommendation. Both parties have petitioned for review and have submitted briefs in support of their respective positions. The Ethics Committee of the Indiana Prosecuting Attorneys Council has also filed a brief *Amicus Curiae,* and the Respondent has petitioned for oral argument; said petition for oral argument is hereby denied.

The review process employed in disciplinary cases involves an examination of the record, the Hearing Officer's findings and conclusions, and any exceptions taken to the tendered matters. *In re Brown* (1987), Ind., 511 N.E.2d 1032; *In re McDaniel* (1984), Ind., 470 N.E.2d 1327; *In re Welke* (1984), Ind., 459 N.E.2d 725. In this case, the Hearing Officer, the Honorable George Beamer, has provided this Court with an excellent report on his findings of fact, and the *Amicus* brief filed by the Prosecuting Attorneys Council has been of significant assistance to this Court. The specific challenges to the findings and conclusions posed by the parties and *Amicus* will be resolved within the review pro-

cesses and this Court's ultimate determination.

Having so reviewed all matters, we now find that the Respondent, Steven Moerlein, was elected as prosecuting attorney in Starke County and took office on January 1, 1983. He served as prosecutor in a part-time capacity and also maintained a private practice.

■ Under Count I, the Respondent is charged with violating Disciplinary Rule 6–101(A)(3) of the *Code of Professional Responsibility for Attorneys at Law*, by neglecting a legal matter entrusted to him. The charge involves two instances in which the Respondent was late for court appearances by approximately a quarter of an hour. In one of these two instances, his office had notified the court that he was running late. In a third instance, no one from the prosecutor's office appeared at a scheduled court hearing. This occurred because the matter was not noted on the office calendar due to breakdown in normal office operating procedures. In two additional instances involving tardiness by the prosecutor's staff, the cases had been assigned to Respondent's deputies. These five incidents spanned a period of two years during which the prosecutor's office handled more than 1,900 cases. We conclude, as did the Hearing Officer, that the findings under this count fail to prove that the Respondent neglected a legal matter entrusted to him.

Under Count II, the Respondent is charged with engaging in conduct involving conflict of interest in violation of Disciplinary Rules 5–105(B) and 9–101(B). This charge involves two dissolution of marriage cases in which the Respondent acted as private counsel.

■ Before the Respondent had taken office as prosecutor, he was retained to represent Leonard Sayler in a dissolution action. Respondent's predecessor, by his deputy, had successfully pursued a support action under the Uniform Reciprocal Enforcement of Support Act (URESA) against Leonard Sayler. However, by the time the Respondent took office as prosecutor, the file on the Sayler case was a closed file in the prosecutor's office. Also, although it was unknown to any of the parties in Starke County, Mrs. Sayler had voluntarily withdrawn from benefits under the Aid to Families with Dependent Children (AFDC) program in November, 1982, effective as of December 1, 1982. The effect of her voluntary withdrawal was to kill any possibility that the URESA action might be reactivated by her. From the foregoing, we conclude that the findings are insufficient to prove violation of Disciplinary Rules 5–105(B) or 9–101(B).

As to the second incident of misconduct alleged under this Count, we find that on January 12, 1984, the Respondent was retained to represent Dennis Fosburgh in a dissolution proceeding. The dissolution was filed on January 12, 1984, and Mrs. Fosburgh sent a *pro se* answer to the petition, in the form of a letter. Therein she stated that she was seeking support for the couple's children, and that she was "currently receiving public assistance in Niagra County (N.Y.) under ADC." A copy of this letter was sent to Respondent's law office and to the Clerk of the Court where it was placed with the case file.

Unknown to the Respondent, a URESA request by Niagra County, N.Y., seeking support from Dennis Fosburgh arrived in Starke County on April 2, 1984. It was picked up by Deputy Prosecutor LeRoy Gudeman, who, without advising the Respondent, commenced the URESA action on April 4, 1984. The Court, on May 4, 1984, by its master commissioner, consolidated the dissolution with the URESA action and removed the Respondent as attorney for Dennis L. Fosburgh. Although the Respondent was not specifically advised by his deputy that a URESA action was being pursued against Respondent's client, the fact that Mrs. Fosburgh was receiving public assistance and intended to seek support from Dennis Fosburgh should have alerted the Respondent and put him on notice that a URESA action could reasonably be expected against his client. In light of this, we conclude that, by his conduct relative to the Fosburgh divorce, the Respondent vio-

lated Disciplinary Rules 5–105(B) and 9–101(B) of the *Code*.

As to the charges under Count III, we find that Barbara Young picked the Respondent's number from an advertisement in the yellow pages and called his office on July 6, 1983. She spoke with Respondent's secretary who advised Mrs. Young that the Respondent would call her back to set an appointment. The Respondent did call back from his prosecutor's office, and Mrs. Young advised him that she was married to two men and wanted to take care of the problem. An appointment was set for 3:00 p.m. Mrs. Young appeared at Respondent's private law office where she was advised that Mr. Moerlein was seeing a client in is office below the jail and that she should go there.

When she entered the prosecutor's office, the Respondent asked Mrs. Young who she was, and she responded in a jocular manner, "I'm the bigamist." Present in the office was also the part-time prosecutor's investigator, Chat Fletcher. Thereafter, the two men exited and discussed whether or not she should be arrested. The Respondent was uncertain as to his own arrest powers, but Fletcher indicated that he would arrest her. When they re-entered the room, Fletcher gave Mrs. Young a Miranda warning, the Respondent told her that he was the Prosecutor, and Fletcher told her she was under arrest. In additional conversation, she made it clear to the Respondent that she had come to see him in his private capacity. Fletcher took Mrs. Young to be booked. Thereafter, at the Court's insistence, Mrs. Young was brought before Judge McLaughlin and a hearing was set for July 8th. On said date, the Respondent tendered an affidavit charging Mrs. Young with bigamy. The court found probable cause, but declined to file the charges because he felt the case could not be won and he wanted to protect against the risk of civil suit.

The foregoing findings clearly establish that the Respondent violated Disciplinary Rules 4–101(A) and (B) by revealing the client's confidences and secrets and by using such to the client's disadvantage.

The second matter under Count III involves the case of Robert Meadows who was arrested and charged with driving while intoxicated, resisting law enforcement, battery, and disorderly conduct. The Respondent was one of several persons who witnessed the incident, but he never intended to be a witness at the trial. Any evidence he could have given would have been cumulative. The case was eventually handled by a deputy and was disposed by a plea agreement. It is charged that the Respondent violated Disciplinary Rule 5–101(B) by the aforesaid conduct. The rule in question prohibits a lawyer from participating in a matter when it is obvious that he ought to be called as a witness. In light of the findings, we conclude that the evidence is insufficient to prove that the Respondent's participation as a witness was obvious and, thus, in violation of Disciplinary Rule 5–101(B).

The charges under Count IV involve four separate incidents in which the Respondent is charged with violating Disciplinary Rule 5–101(A) by accepting employment when the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property or personal interests. As to the first incident of misconduct, which involves allegations that the Respondent improperly declined to prosecute his investigator, Chat Fletcher, the Hearing Officer found that there was no evidence.

The Hearing Officer made findings as to the second incident which involved a traffic ticket issued to the same Chat Fletcher. The Hearing Officer concluded that there was no misconduct, and the Commission made no objection to his determination.

The third incident involves Respondent's representation of Jerry Scott in a dissolution of marriage action. Jerry Scott retained the Respondent in November of 1982, the petition for dissolution was filed on November 29, 1982, provisional orders were entered by agreement and final hearing was had on April 6, 1983, at which time the dissolution was granted.

On July 18, 1983, an altercation occurred between Jerry and Sharon Scott, the for-

mer wife. Sharon Scott alleged that Jerry Scott had entered the marital property in order to make certain repairs as directed by the court, and Sharon Scott had refused access. The argument resulted in blows being struck by both. Sharon Scott reported the incident to the police and contacted the prosecutor's office to register a complaint against Jerry Scott. The stories, as told by each side, were diametrically opposed. Following standard operating procedures, the Respondent advised Mrs. Scott that if he filed charges against Jerry Scott, he would also have to file against Mrs. Scott and let the court decide. She declined to pursue the complaint.

In September of 1983, Jerry Scott again consulted the Respondent in his capacity as private counsel for the purpose of seeking modification of the divorce decree. The Respondent filed a petition on September 22, 1983 and a Rule of Show Cause against Sharon Scott for failing to allow Jerry Scott to enter and make repairs to the property, as ordered in the original decree. The Respondent undertook to represent Jerry Scott in a modification proceeding which also involved a request for contempt citation for the very same incident which was the basis of the altercation of July, 1983, for which Sharon Scott had requested the Respondent file charges. We conclude from the foregoing findings that by again accepting employment from Jerry Scott under such circumstances, the Respondent violated Disciplinary Rule 5–101(A).

The circumstances of the last alleged incident of misconduct under this Count also involve a potential conflict of interest. The Hearing Officer found, and we agree, that the evidence does not support a finding of misconduct.

As to Counts V and VI, the Hearing Officer, after extensive findings, concluded that misconduct had not been proved, and such conclusions have not been challenged by the Commission. We, thus, conclude, that the findings of fact tendered by the Hearing Officer do not support a finding of misconduct under Counts V or VI.

Under Count VII, it is charged that, by engaging in the misconduct set out in Counts I through VI, the Respondent violated Disciplinary Rules 1–102(A)(5) and (6). The Hearing Officer found no misconduct under this Count, noting that this case revealed an unhappy political situation in Starke County and substantial friction in the County between elected officials. Having reviewed our findings of misconduct under Counts II, III and IV, we conclude that the allegation under this Count that the Respondent engaged in conduct prejudicial to the administration of justice and conduct which adversely reflects on his fitness of law is not supported by the findings.

Upon finding misconduct, we must now assess an appropriate sanction. In making such assessment, this Court examines the nature of the violation, the specific acts of the Respondent, the impact on the public, this Court's responsibility to preserve the integrity of the Bar and the risk, if any, to which the public will be submitted if the Respondent is permitted to continue in the profession. *In re Briggs* (1987), Ind., 502 N.E.2d 890; *In re Stanton* (1986), Ind., 492 N.E.2d 1056; *In re Duffy* (1985), Ind., 482 N.E.2d 1137. The misconduct exhibited in this case indicates that the Respondent engaged in prohibited conflict of interest and revealed the confidences of his client to her detriment. In light of the above considerations and the findings of fact, we find that the misconduct set out herein warrants a public reprimand. Accordingly, the Respondent is hereby reprimanded and admonished.

Costs of this proceeding are assessed against the Respondent.