**In the Matter of John L. HUDGINS.**

No. 49S00–8611–DI–990.

Supreme Court of Indiana.

July 10, 1989.

James H. Voyles, Indianapolis, for respondent.

Sheldon A. Breskow, Executive Secretary, Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

This case is before us on a one count Verified Complaint For Disciplinary Action charging the Respondent, John L. Hudgins, with violating Disciplinary Rule 1–102(A)(3) of the *Code of Professional Responsibility for Attorneys at Law*. After a hearing thereon, the Hearing Officer appointed by this Court has tendered his findings of fact and conclusions of law. The Disciplinary Commission has petitioned for review of certain findings and conclusions and both parties have argued their respective positions.

The charge against the Respondent arises out of his arrest and conviction for child molesting. The evidence is uncontraverted as to what transpired, and, in fact, the Respondent admits that his conduct

constitutes a violation of Disciplinary Rule 1–102(A)(3).

We find relative to this issue that the Respondent had at various times coached basketball teams at a private grade school. During his association with the school, the Respondent molested two boys who were former players on his team. During one of the incidents, which occurred in 1985, the Respondent placed his hands on the legs and thighs of a 7th grade boy at the boy's home where the boy was recuperating from a broken arm. On another occasion in 1986, at Respondent's law office, the Respondent touched and stroked the private parts of an eighth grade boy. On numerous occasions during 1984–1986, the Respondent touched the breasts and genitals of a grade school aged girl who was baby-sitting for Respondent's family.

On February 21, 1986, the Respondent was arrested and charged with Child Molesting, a Class D Felony. The charge related to a February 1, 1986 incident when the Respondent unbuttoned the pants and blouse of the aforementioned 14 year old baby-sitter and touched the child's bare breasts and genitals.

The Respondent entered into a plea agreement whereby he pleaded guilty to a Class D felony and the State recommended that the Court enter judgment of a Class A misdemeanor. The trial court entered a judgment of conviction for Child Molesting as a Class A misdemeanor, sentenced the Respondent to one year, suspended the sentence, and placed the Respondent on probation with one condition being that he pursue psychiatric counseling until dismissed by his psychiatrist.

The foregoing findings clearly establish that the Respondent engaged in illegal conduct involving moral turpitude in violation of Disciplinary Rule 1–102(A)(3).

The Hearing Officer made further findings relative to Respondent's conduct. He found that the misconduct did not involve a client or an attorney-client relationship; that the Respondent conscientiously represents his clients' interests, conducts himself properly in Court, is prepared to effectively represent his clients, knows the factual and legal basis of the cases he handles and is honest with the Court and other attorneys.

After the final hearing before the Hearing Officer, the Respondent was seen by Dr. William Murray, a psychiatrist, whose written evaluation was admitted into evidence by stipulation. The Hearing Officer made certain findings of fact as to Dr. Murray's evaluation which findings the Disciplinary Commission has challenged as being incomplete.

The evaluation in question is in the form of a three page letter addressed to Respondent's counsel. Therein, Dr. Murray relates that he had personal interviews with the Respondent on four occasions for a total of at least six hours; he reviewed treatment notes of Dr. Michael Deal (Respondent's psychiatrist) and had the Respondent take a Minnesota Multiphasic Personality Inventory (MMPI).

From said treatment notes, Dr. Murray deduced that 1) Respondent's past medical history was considered not remarkable, 2) Respondent has had no previous history of mental or emotional problems, 3) his psychosocial adjustment was hindered by his own feelings of low self-esteem and feelings of rejection while in school. Dr. Murray further noted that Dr. Deal had found that a) Respondent's thought processes were logical and sequential, b) no grossly abnormal thought content was noted, c) mood and affect were appropriate to thought content which centered around his present legal difficulties; d) disturbances in sleep, appetite and dysphoria were consistent with depression.

From his own evaluation Dr. Murray concluded that the MMPI results showed no appreciable depression; elsewhere, moderate anxiety and tension were reported along with a tendency to worry and be pessimistic.

It is Dr. Murray's professional opinion that the Respondent was aware of the nature and quality of his acts, but he was unable to block his impulses. Dr. Murray stated that the Respondent has been undergoing therapy for a year and has done

some pertinent reading on his own and he has shown remorse for his conduct. Dr. Murray further believed that the Respondent is capable of practicing law and meeting the various ethical standards but that, of course, there is no guarantee that this behavior may not be repeated, although, continued psychotherapy would certainly diminish the chance of history repeating itself.

Thereafter, the Hearing Officer concluded that the Respondent engaged in misconduct but that he presents no danger to the public, to the Courts, to the profession or himself.

The Commission has challenged this conclusion contending that Respondent's criminal conduct impacts his professional status and poses a danger to the public, the Court and the legal profession.

The Respondent objects to such position arguing that his fitness to practice law was not the subject of the charge lodged against him and its presentation at the review stage of the proceeding violates his right to due process.

The only question before us is what sanction, if any, is warranted under the circumstances of this case. As stated earlier, the Respondent admits that his conduct constitutes illegal conduct involving moral turpitude in violation of Disciplinary Rule 1–102(A)(6). However, he contends that he should not be disciplined for his misconduct, or, at most, he should be placed on probation under restrictions because 1) there is no nexus between his misconduct and his fitness to practice law and 2) the misconduct is due to a treatable emotional problem. The question of danger to the public or fitness as a lawyer has arisen within the context of assessing the appropriate sanction. Under these circumstances, Respondent's due process argument is, at best, untenable.

The essence of Disciplinary Rule 1–102(A)(3) is the commission of an act which is not only illegal but involves moral turpitude. A violation of this rule brings in issue the attorney's moral fitness and suitability to practice law. *In re Oliver* (1986), Ind. 493 N.E.2d 1237. This is distinguished

from Disciplinary Rule 1–102(A)(6) which proscribes other conduct that may adversely reflect on a lawyer's fitness to practice. Commission of some crimes establishes moral turpitude on its face. These include crimes that necessarily involve an intent to defraud, intentional dishonesty for personal gain, or behavior particularly repugnant to accepted moral standards. *Id.* But the issue before us is not whether or not the Respondent's illegal act involves moral turpitude as was the issue in *Oliver.* The very violation of Disciplinary Rule 1–102(A)(3) indicates not only an illegal act but conduct involving a certain moral lapse. All other considerations only impact the sanction to be imposed by this Court.

The Respondent cites to two cases, *In re Safran,* 18 Cal.3d 134, 554 P.2d 329, 133 Cal.Rptr. 9 (1976) and *In re Kimmel,* 322 N.W.2d 224 (Minn.1982) which involve attorneys who were disciplined for sexual misconduct. There, the Respondents were placed on probation when it was shown that repeated misconduct was highly unlikely. While some jurisdictions have treated this sort of misconduct more leniently, others have not and have imposed disbarment and indefinite suspension. See generally 43 ALR 4th 1062. This Court has repeatedly stressed that in assessing a sanction we are concerned with several factors: the nature of the violation, the specific acts of the Respondent, the impact on the public and this Court's responsibility to preserve the integrity of the Bar and the risk, if any, to which the public will be submitted if the Respondent is permitted to continue in the profession or be reinstated at some future date. *In re Hampton* (1989), Ind., 533 N.E.2d 122, *In re Moerlein* (1988), Ind., 520 N.E.2d 1275, *In re Briggs* (1987), Ind., 502 N.E.2d 890. Thus, danger to the public is but one of the factors considered in such deliberations.

The Respondent analogizes his circumstance to that of a disabled attorney. However, there is no indication whatsoever that the Respondent suffers from any disability by reason of mental illness or infirmity, or because of the use of or addiction

to intoxicants or drugs as envisioned in Admission and Discipline Rule 23, Section 25.

The Respondent also attempts to draw a parallel with *In re Levinson* (1983), Ind., 444 N.E.2d 1175, and (1986), Ind., 498 N.E.2d 980, suggesting that monitored practice and periodic reports would suffice as a sanction. The Respondent in *Levinson* had failed to appear or otherwise defend himself and was disbarred for misconduct involving neglect and three counts of public indecency. He had been observed by the local police standing at his window, nude, masturbating and waving to attract attention. He was permitted to petition for reinstatement prior to expiration of the five year period specified in Admission and Discipline Rule 23, Section 4, upon a showing that he had been suffering from a mental impairment and that he was freed from such impairment. This Court, some three and one half years after the disbarment, approved the Disciplinary Commission's recommendation to reinstate the Respondent, subject to the semiannual medical reports.

An analogy between the two cases is simply not there. The sexual misconduct in *Levinson*, although reprehensible, did not involve children and was not of the same magnitude as the misconduct before us. Additionally, that respondent was disbarred; the restriction of periodic reports was only a condition to his reinstatement.

The Respondent proposes that to hold a person with a treatable emotional problem as a person too immoral to practice law is to equate emotional problems with lack of morality. The Respondent is not before this Court because he has an emotional problem. His fitness as a member of the Bar and an officer of this Court is being challenged because he sexually molested several children, an act defined as a felony. There is no evidence that the Respondent was mentally impaired or incapable of knowing what he was doing. In fact, Dr. Murray's expert testimony is that the Respondent was aware of the nature and quality of his acts and that there is no guarantee that such conduct will not be repeated. It requires some stretch of the imagination to view child molestation as a mere treatable emotional problem. Judgment of the community upon a lawyer's conduct is a part of the determination of moral turpitude, which depends upon the state of public morals and may vary according to time and place, as well as with the degree of public harm produced by the act in question. *Oliver, Supra.* The Respondent has conceded that his conduct involves moral turpitude. We, thus, cannot ignore the very nature of Respondent's acts. The impact of this illegal, lurid conduct on the integrity of the legal profession and on the public's perception of Respondent's moral fitness as an officer of this Court convinces us that the strongest sanction available should be imposed. It is, therefore, ordered that the Respondent, John L. Hudgins, is hereby disbarred.

Costs of this proceeding are assessed against the Respondent.

GIVAN, PIVARNIK and DICKSON, JJ., concur.

SHEPARD, C.J. and DeBRULER, J., dissent and would impose suspension for a period of not less than one year.