In the Matter of James L. POWELL.

Cause No. 49S00–8603–DI–252.

Supreme Court of Indiana.

Aug. 8, 1988.

James H. Voyles, Indianapolis, for re-
·spondent.

Sheldon A. Breskow, Executive Secre-
tary, Indianapolis, William G. Hussman,
Jr., Clifford R. Courtney, Staff Attys., In-
dianapolis, for the Indiana Supreme Court
Disciplinary Com'n.

PER CURIAM.

The Respondent, James L. Powell, has
been charged in this cause with two counts
of misconduct, both of which involve al-
leged misappropriation of clients' funds. A
Hearing Officer was appointed pursuant to
Admission and Discipline Rule 23. After a
hearing and upon the Hearing Officer's
recommendation, the Respondent was sus-
pended pending final determination.

In the course of this proceeding, Dr. Lar-
ry Davis, a psychiatrist, also filed a Peti-
tion for Disability alleging that the Respon-
dent suffered from a disability which ren-
dered him incapable of effectively perform-
ing his professional duties.

The Hearing Officer has submitted his
Findings of Fact and Conclusions of Law
and the Respondent has petitioned for re-
view of the Hearing Officer's report. Af-
ter the findings and pleadings for review
were filed, the Respondent also tendered
his resignation. We now find that the res-
ignation is not timely and hereby deny Re-
spondent's request to resign.

In his petition for review and supporting
brief, the Respondent challenges the find-
ings as being either contrary to the evi-
dence or not supported by clear and con-
vincing evidence and further alleges that
he is a disabled attorney.

Respondent's challenges to the findings
and conclusions will be resolved within the
normal review process, which encompasses
our examination of all evidence presented
at the hearing, the Hearing Officer's re-
port, and all other matters presented.
Having so reviewed this case, we now find
that the Respondent was first admitted to
the practice of law in Indiana on September
26, 1972. As to Count I, we find that, on
September 9, 1983, the Respondent was
retained by John K. Ragsdale to pursue a
personal injury claim. The Respondent
filed suit on November 7, 1983, and, on
March 21, 1984, he received a settlement
for $25,000 from the defendant's insurance
carrier. The check was payable to "John
K. Ragsdale and Susie M. Ragsdale, indi-
vidually and as husband and wife, and
James L. Powell, their attorney". On
March 21, 1984, the Respondent settled the
personal injury claim by signing or causing
another to sign Ragsdales' names to a re-
lease and discharge agreement and to the
settlement check. Thereafter, on March
23, 1984, the Respondent deposited the
$25,000 settlement check in his business
account. On March 22, 1984, he entered
into a Stipulation of Dismissal whereby the
Ragsdales' suit was dismissed with preju-
dice. The Respondent requested the Rags-

dales to execute a "release agreement", prepared by the Respondent, as a condition precedent to receipt of a personal check for $25,000. Between April 4, 1984, and January 25, 1985, the balance in Respondent's business account was consistently below the amount the Respondent should have held for the Ragsdales. During this time the Respondent converted the Ragsdales' funds for his own use, in violation of IC 35-43-4-3. In addition to requesting a release, the Respondent sought to preclude the filing of a disciplinary complaint against him based upon the foregoing facts.

Under Count II, we find that the Respondent was retained to open an estate to pursue a wrongful death claim for Robert Bush, the father of a minor. The Respondent opened the estate of Jennifer L. Bush on March 9, 1983. On July 26, 1984, the Respondent, with the consent of Robert Bush, settled the case for $8,000. The Respondent received the check, endorsed it and deposited it into his bank account on June 26, 1984. Between July 1984 and January 1986, Robert Bush contacted the Respondent repeatedly and requested the funds. After receiving no response, Robert Bush contacted Victor Pfau, Judge, Marion Probate Court. Judge Pfau called the Respondent on January 22, 1986, and the Respondent falsely stated that the Respondent had not yet received the proceeds of the settlement. Judge Pfau scheduled a conference for January 24, 1986, in regards to the Bush estate. The Respondent appeared, paid the money to Bush, with interest, and filed a final accounting. The Respondent admitted at the hearing that he had lied to the Judge concerning the funds. During the period between the time the Respondent received the funds and paid Bush, the balance in Respondent's account frequently fell below the amount he should have been holding for the Bush estate. The Respondent, in fact, had converted the Bush estate funds for his own purposes, in violation of IC 35-43-4-3. The Respondent had also failed to advise Bush that the Court had entered a Notice of Dismissal of the Estate on November 11, 1985, due to the failure of Respondent or Bush to close the estate or to respond to the Court's request for a status report.

At the hearing conducted in this disciplinary proceeding, the Respondent had two expert witnesses testify in an effort to prove that he was disabled during the time in question. It is on this issue of disability that the Respondent disagrees with the Hearing Officer's findings and conclusions.

Relative to the issue of disability, we find that Dr. Larry M. Davis, a psychiatrist, saw the Respondent on June 30, 1986, at the request of Respondent's counsel and examined him within the confines of a fairly standard interview which included an objective test and assessment of Respondent's history as presented by the Respondent. Based upon these, Dr. Davis expressed an opinion as to Respondent's condition at the time of the examination and during 1984, the time of the alleged misconduct. The essence of the testimony was that the Respondent had been severely preoccupied with health issues, suffered from depression and simply was not attending to the details of his work. However, Respondent's condition was not such that he did not know right from wrong.

The Respondent also consulted Dr. A.R. Recinto, who first saw the Respondent on August 1, 1986, for a diagnostic evaluation. Dr. Recinto concluded that, at the time he saw him, the Respondent was suffering from major depression, single episode. Dr. Recinto placed the Respondent on antidepressant medication and, by August 30, 1986, the Respondent was functioning better. Dr. Davis also testified that the Respondent was no longer under a disability.

It is undisputed that the Respondent misappropriated client's funds entrusted to him. However, it is Respondent's contention that, in light of the expert testimony concerning his disability, the Commission has failed to prove, by clear and convincing evidence, that the Respondent violated the Code of Professional Responsibility. An evaluation of this contention necessitates a determination as to (1) whether the Respondent was under a disability at the time of the commission of misconduct, and (2)

whether the alleged disability is of such nature as to serve as a defense.

Admission and Discipline Rule 23, Section 25, sets out specific procedures for determining disability, and, in accordance therewith, this Court has, in the past, found lawyers to be disabled and has suspended or restricted their practice. In the present case, however, any disability which may have existed had terminated by the time the hearing took place. The Respondent does not claim that he is now disabled but that, because of alleged past disability, he should not now be held responsible for misconduct occurring during such disability.

After an opportunity to personally hear and observe the testimony of all the witnesses as to Respondent' condition in 1984, the Hearing Officer concluded that, although the Respondent may have had a depressive condition, it certainly was not of such severity as to render him unable to distinguish right from wrong and honesty from dishonesty. We find the Hearing Officer's conclusion to be correct. We note further that Respondent's misconduct was not the result of neglect; it involved a very conscious misappropriation of funds. Respondent's acts during the time in question indicate to us that he was quite capable and effective in preparing documents exculpating himself. We also note that he did not seek psychiatric evaluation or treatment during the period of misconduct but only after a hearing on the matter became imminent. Accordingly, we find, from the conduct set out above, that Respondent's acts were done with full awareness, with calculation and with sheer self-interest in mind. Such acts are not consistent with a determination of disability. Accordingly, this Court now concludes that, at the time of misconduct, the Respondent was not disabled. Although some jurisdictions recognize a mental disturbance as a complete defense to or a mitigating factor at attorney disciplinary proceedings, others do not. 26 A.L.R.4th 995. In the past, when symptoms indicating some mental or emotional disturbance have been raised in disciplinary proceedings, this Court has held that it has a responsibility to safeguard the public from unfit lawyers, whatever the cause of unfitness may be. *In Re Erbecker* (1987), Ind., 513 N.E.2d 1214; *In Re Runyon* (1986), Ind., 491 N.E.2d 189; *In Re Hayes, Jr.* (1984), Ind., 467 N.E.2d 20; *In Re Vincent* (1978), 268 Ind. 101, 374 N.E.2d 40; *In Re Connor* (1976) 265 Ind. 610, 358 N.E.2d 120. In this particular case, however, having found no serious disability, we need not proceed to the hypothetical issue of whether the alleged condition could serve as a defense.

We, thus, conclude that the Respondent, by misrepresenting the status of cases to his clients, engaged in conduct involving dishonesty, fraud, deceit and misrepresentation; in conduct which is prejudicial to the administration of justice and conduct which adversely reflects on his fitness to practice law in violation of Disciplinary Rules 1–102(A)(4), (5) and (6). By requiring his clients to execute a release, the Respondent attempted to exonerate himself and limit his liability to his client for his personal malpractice, thereby violating Disciplinary Rule 6–102(A). By failing to promptly notify his clients of the receipt of monies on their behalf, by failing to promptly distribute the same and by failing to deposit said funds into a segregated trust account, the Respondent violated Disciplinary Rules 9–102(A), 9–102(B)(1). By such conduct the Respondent prejudiced and damaged his clients in violation of Disciplinary Rule 7–101(A)(3). By converting clients' funds to his own use, the Respondent engaged in illegal conduct involving moral turpitude, in violation of Disciplinary Rule 1–102(A)(3) of the *Code of Professional Responsibility for Attorneys at Law.*

Having concluded that the Respondent engaged in misconduct, we must now determine an appropriate sanction. In making its decision this Court considers the nature of the violations, the specific acts of the Respondent, this Court's responsibility to preserve the integrity of the Bar, and the risk, if any, to which we will subject the public by permitting the Respondent to continue in the profession or be reinstated at some future date. *In Re Briggs* (1987), Ind., 502 N.E.2d 890; *In Re Duffy* (1985),

Ind., 482 N.E.2d 1137; *In Re Vincent, Supra.*

The findings of fact clearly establish that the Respondent signed or caused to be signed his clients' names to checks and documents and proceeded to convert and use his clients' funds as his own. He further exacerbated the misconduct by attempting to exonerate himself. Acts of this nature are abhorrent to this Court. We would be remiss in our duty to the public were we to impose a sanction short of disbarment. Accordingly, it is now ordered that the Respondent, James L. Powell, be, and he hereby is, disbarred.

Costs of these proceedings are assessed against the Respondent.