**In the Matter of Craig B. CAMPBELL.**

**No. 48S00–8808–DI–779.**

Supreme Court of Indiana.

Nov. 28, 1989.

Max Howard, John T. Scott, Anderson, for respondent.

Martin Risacher, Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This case is before us on a two count verified complaint for disciplinary action charging the Respondent with violating the *Code of Professional Responsibility for Attorneys at Law.* The Hearing Officer appointed pursuant to Admission and Discipline Rule 23, Section 11(b) has submitted his findings of fact, conclusions of law and recommendations.

Neither the Respondent nor the Disciplinary Commission have petitioned for review of the Hearing Officer's report. Nonetheless, in cases involving attorney discipline, this Court arrives at the ultimate determination of misconduct and sanction only after a *de novo* examination of all matters submitted in the case. See, *In re Hampton* (1989), Ind., 533 N.E.2d 122.

Having so reviewed all matters presented herein, we find that the Hearing Officer's findings and conclusions should be approved. Accordingly, we find that the Respondent is a member of the Bar of this State and is thus subject to this Court's jurisdiction.

On May 16, 1984, the Respondent was appointed Administrator of the Estate of Zella Jane Cook in the Madison Circuit Court. On June 3, 1986, the Respondent filed an Order on Final Account and Decree

of Final Distribution which directed him to distribute the personal property, including cash remaining in his possession, to the devisees of the estate. On June 17, 1986, the Respondent filed a Supplemental Report which represented that the Respondent had made distribution to the heirs, legatees, devisees, and distributees of the estate. After June 17, 1986, the court received notice that Minerva Broghera, an heir of the estate, had not received the distribution. The Respondent had converted the cash proceeds of the Cook estate to his own use. Thereafter, the Respondent's mother paid the amount due to Minerva Broghera by a check drawn on the mother's personal account.

Sometime in the fall of 1986, the Alexandria Banking Company (Alexandria) retained the Respondent to represent its interest in the bankruptcy of Allen Turkey Farms (Allen). On November 19, 1986, the bankruptcy trustee presented to Respondent a settlement check for $10,159.11 relating to Alexandria's claim against Allen. The Respondent deposited this check into his own trust account which, at the time, he was also using to pay office expenses. He subsequently wrote checks on this account totalling $3,185.44 for his office expenses. The remaining balance in Respondent's trust account was sufficient to satisfy the client's claim to the account.

Prior to the filing of the Verified Complaint for Disciplinary Action, the Cook estate was fully reimbursed and Alexandria Banking Company was paid in full.

The foregoing findings establish clearly that the Respondent engaged in the charged misconduct. By failing to distribute the funds to Broghera as he represented in the Supplemental Report filed with the court, the Respondent violated Rule 3.3(a)(1) of the *Rules of Professional Conduct for Attorneys at Law* in that he made a false statement of material fact to a tribunal. He violated Rule 1.15(a) by failing to maintain client's funds in a separate, properly identifiable account. By converting the estate funds to his own use, the Respondent committed an improper act that reflects adversely on his honesty, trustworthiness and fitness as a lawyer, and engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, all in violation of Rule 8.4(a), (c) and (d). By holding his client's funds in an account with his own funds, the Respondent failed to hold the property of a client separate from his own property, thereby violating Rule 1.15(a).

We find further that from the time of his admission to the Bar until the early 1980's, the Respondent established a legal career as an effective attorney, a civic and political leader, having served 14 years in the Indiana House of Representatives, often in leadership positions. The Respondent started to exhibit symptoms of alcoholism in the early 1980's. Between 1982 and 1987, when the Respondent gave up his seat in the Legislature, his marriage was dissolved, his personal finances were depleted, and his legal practice was grossly neglected. On May 27, 1984, the Respondent was hospitalized for medical disabilities resulting from chronic excessive alcohol ingestion. Thereafter, he was hospitalized seven times, with the last admission being at Richmond State Hospital from August 4, 1987, until January 15, 1988. The Respondent was diagnosed as early as May, 1984, to be suffering from Korsakoff psychosis due to excessive alcohol use, and he exhibited typical symptoms of chronic brain syndrome, including disturbance of orientation, falsification of memory and hallucination.

The Respondent withdrew from the practice of law on July 22, 1987. Since that date, he has abstained from using alcohol and has been involved in a recovery program. He has undergone inpatient treatment at St. John's Medical Center from July 22, 1987, to August 4, 1987, and in Richmond State Hospital from August 4, 1987, to January 15, 1988, under a voluntary commitment; he has completed an outpatient substance abuse program at the Center for Mental Health; he regularly attends Alcoholics Anonymous meetings and serves as lead speaker at such meetings; he is involved in the operation of and serves on the Board of Directors of the House of Hope, a half way house for sub-

stance abusers. The Respondent has been successful in his recovery program and understands that, due to the nature of alcoholism, he must continue to work at the recovery program.

Assessment of an appropriate sanction involves an examination of the nature of the violation, the specific act of the Respondent, this Court's responsibility to preserve the integrity of the Bar and the risk to which the public will be subjected if the Respondent is permitted to continue in the profession. *In re Hampton, Supra; In re Moerlein* (1988), Ind., 520 N.E.2d 1275. The grievous misconduct established in this case, misappropriation of client's funds, calls for a severe sanction. This Court has often emphasized our duty to safeguard the public from unfit lawyers, whatever the cause of unfitness may be. *In re Powell* (1988), Ind. 526 N.E.2d 971; *In re Erbecker* (1987), Ind., 513 N.E.2d 1214; *In re Runyon* (1986), Ind., 491 N.E.2d 189. However, in this case, we are further mindful of the mitigating evidence of Respondent's concerted efforts toward recovery, of the reimbursements to damaged clients, the voluntary abstention from the practice of law and his sustained success at recovery. The Hearing Officer was fully convinced of Respondent's sincere efforts and success at recovery and reflected this in the recommendation.

In light of these findings and considerations, we conclude that the appropriate sanction for the misconduct set out above is a suspension from the practice of law for a period of three (3) years effective as of July 22, 1987, the date of Respondent's voluntary withdrawal from the practice of law. Furthermore, as a precondition to subsequent reinstatement pursuant to Admission and Discipline Rule 23, Section 4, the Respondent must show that he has complied with the following conditions: 1) The Respondent must continue his recovery program and abstain from the use of alcohol; 2) He must attend at least two Alcoholics Anonymous meetings each week; 3) He must continue his involvement with the House of Hope; 4) His recovery must be monitored by the Indianapolis Bar Association Lawyer Assistance Committee under their program for monitoring referred attorneys, as approved on April 4, 1989 by an Order of this Court.

IT IS, THEREFORE, ORDERED that the Respondent, Craig B. Campbell, is hereby suspended from the practice of law for a period of three (3) years, effective July 22, 1987. IT IS FURTHER ORDERED that, as a condition to subsequent reinstatement, the Respondent must show that he has complied with the above stated conditions. In accordance therewith, the Respondent is hereby referred to the Indianapolis Bar Association Lawyer Assistance Committee for monitoring.

Costs of this proceeding are assessed against the Respondent.

PIVARNIK, J., dissents and would impose disbarment.