**In the Matter of Timothy P. O'CONNOR.**

No. 49S00-8905-DI-402.

Supreme Court of Indiana.

May 3, 1990.

James W. Bradford, Indianapolis, for respondent.

David B. Hughes, Indianapolis, for Ind. Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent, Timothy O'Connor, was charged in an eight count verified complaint for disciplinary action with numerous violations of the *Rules of Professional Conduct.* The Hearing Officer appointed pursuant to Admission and Discipline Rule 23, after a hearing thereon, tendered his Findings of Facts and Conclusions of Law. Neither party petitioned for review, and, based upon said findings, this Court determined that the Respondent should be disbarred. On March 14, 1990, this Court entered an order disbarring the Respondent, 550 N.E.2d 1307. The present opinion more fully sets out the particular findings of fact and specific incidents of misconduct by virtue of which the Respondent was disbarred.

Upon review of all matters submitted in this cause, we find that the Hearing Officer' findings and conclusions should be accepted. Accordingly, we find that the Respondent was admitted to the Indiana Bar in 1972 and is, thus, subject to this Court's disciplinary jurisdiction.

Under Count I, we find that, during 1978, the Respondent was retained and paid $250 to pursue a custody modification on behalf of a client. The Respondent failed to take any action in the matter and failed to communicate with his client in spite of the client's repeated attempts to contact the Respondent. It became necessary for the client to retain another attorney. Although at one point the Respondent promised to return the unearned fee, as of the time of final hearing in this cause, the fee had not been returned.

These findings establish that the Respondent failed to represent his client with promptness and reasonable diligence in violation of Rule 1.3, failed to refund unearned fees, in violation of Rule 1.16, failed to keep his client reasonably informed, and failed to promptly comply with requests for information, in violation of Rule 1.4(a) of the *Rules of Professional Conduct.*

As to the charges under Count II, we find that, during 1987, the Respondent was retained by Mr. and Mrs. Watt to pursue a personal injury claim on a contingent fee basis. The insurance carrier of the party responsible for the accident causing the injury contacted the Watts and, on October 29, 1987, made a written offer to settle their claim for $9,533.83. On December 28, 1987, the Respondent advised the carrier that the offer was acceptable although he never consulted with Mrs. Watt as to whether or not it was acceptable to her. On that same day, the Respondent received from the insurance carrier two drafts, one for $4,421.02 payable to Medicaid and the Respondent, the second in the amount of $5,112.80, payable to Mr. and Mrs. Watts and the Respondent. The Respondent promised the insurance carrier that he

would forward to them his clients' written release of all claims.

After Watt endorsed both his and his wife's name on the larger of the two drafts, the Respondent negotiated the draft and thereafter spent the entire proceeds. The Watts had not authorized the Respondent to spend their settlement proceeds. Although he had promised to do so, the Respondent did not provide the carrier with the required release.

On January 12, 1988, the Respondent gave the Watts a check in the amount of $5,112.80 written on his checking account at the I.U. Federal Credit Union even though he knew that the account did not have sufficient funds to cover the amount of the check. On March 8, 1988, more than two months after the settlement check was first received, and after the checking account was closed involuntarily by action of the credit union, the Respondent paid the Watts in cash.

After negotiating a settlement with Medicaid in early March of 1988, the Respondent endorsed to Medicaid the $4,421.02 draft payable jointly to the Respondent and Medicaid and, in return, accepted a check for $3,937.02. The Respondent retained all the proceeds from said check although the amount exceeded the agreed fee of one-third of the gross settlement.

From these findings, we conclude that, by reaching a settlement without consulting Mrs. Watt, the Respondent failed to abide by a client's decision whether to accept an offer of settlement, thereby violating Rule 1.2(a) of the *Rules of Professional Conduct.* By failing to promptly hand over the settlement proceeds, failing to safeguard and keep such funds in a separate account, and spending such funds, the Respondent engaged in a criminal act that reflects adversely on his honesty, trustworthiness and fitness as a lawyer, in violation of Rule 8.4(b), (c) and (d) and 1.15(a) and (b) of the *Rules.*

Under Count III, we find that, during 1985, the Respondent was retained to pursue a claim resulting from an injury received in a job site accident. The agreed attorney fee was one-third of all sums recovered as result of the injury.

The Respondent was able to effect a small recovery for the client's temporary total disability through the Indiana Industrial Board but he made no other claim against the client's employer.

The Respondent also represented this client in a criminal matter which resulted in the client's incarceration at the Westview Correctional Center from May, 1986, to August, 1987. While so incarcerated and after his release, the client repeatedly inquired of Respondent as to the status of his claim. After he failed to answer the client's correspondence from the correctional center, the Respondent assured the client's mother and, after the client's release, the client himself that the matter was progressing fine and it was "just a matter of time." In fact, the Respondent provided no appreciable legal service to this client.

We conclude from the foregoing findings that the Respondent failed to keep his client reasonably informed, failed to pursue the client's claim, and failed to act with reasonable diligence and promptness, all in violation of Rules 1.4(a) and 1.3 of the *Rules of Professional Conduct.*

We find, as did the Hearing Officer, that the evidence relating to the charges under Count IV is not sufficient to support a finding of misconduct.

In respect to Count V, we find that Mr. and Mrs. Hickman hired the Respondent to pursue a claim for damages arising from an injury incurred by Mr. Hickman when he was struck by an uninsured, drunk driver. The agreed attorney fee was one-third of all sums collected.

The Respondent made a claim against the clients' insurance carrier under the uninsured motorist provision of the policy and agreed to be present during a meeting between the insurance representative and the clients. The Respondent failed to attend the meeting.

The clients settled their claim against their own carrier for $20,000. The Hickmans received approximately $8,600, the

Respondent received approximately $6,000, and $4,000 was held by the Respondent to satisfy possible medical subrogation claims. The Respondent never advised the Hickmans of the ultimate outcome of the subrogation claim or the disposition of the $4,000.

The drunk driver who had struck Mr. Hickman was charged with the offense of driving under the influence. The Respondent again promised his clients that he would attend and follow the criminal trial, but he failed to do so. The driver pled guilty and was ordered to pay the Hickmans $1,500 as partial restitution. The Respondent had failed to advise the Hickmans that, pursuant to their settlement agreement with the insurance carrier, they were required to repay the $1,500 to the insurance company.

The foregoing findings establish clearly that the Respondent once again failed to act with reasonable diligence, failed to maintain adequate communication with his clients and failed to keep them reasonably informed, all in violation of Rules 1.3 and 1.4(a) of the *Rules of Professional Conduct.*

We find no misconduct under Count VI in that the allegations under this count were not supported by the evidence.

Under Count VII we find that, on June 24, 1988, the Respondent was hired and paid $2,000 by Scarborough to promptly seek the release of Scarborough's son from the Indiana State Farm. The Respondent had told Scarborough that the Respondent would "walk" the son out of prison.

On October 20, 1988, after telephoning Respondent's office between 20 to 50 times, Scarborough, through a certified letter, terminated the employment and requested refund of his fee and return of the transcripts from the son's trial. This letter was returned to the sender.

On October 18, 1988, the Respondent filed a one-half page "Motion For Early Release." The Motion was granted, and the defendant was recommended for work release "as soon as he is eligible for same." However, since the defendant was not yet eligible for work release, he remained incarcerated.

We conclude, under this count, that the Respondent failed to keep his client reasonably informed and failed to promptly comply with reasonable requests for information, in violation of Rule 1.4(a). By assuring Scarborough of the son's release, the Respondent failed to render honest and candid advice, thereby violating Rule 2.1. By failing to return the transcripts and unearned portion of the fee, the Respondent further violated Rule 1.16(d) of the *Rules of Professional Conduct.*

We find under Count VIII that, in 1985, Robert Beverly retained the Respondent to pursue a claim for injuries incurred in an automobile accident. The Respondent filed the action on August 4, 1986, and, on July 24, 1987, the court granted a default judgement. The Respondent advised Beverly that they would now proceed to collect the judgement. Beverly called the Respondent constantly for a period of time but was never able to discuss the case with him.

Beverly terminated the employment and retained other counsel to pursue collection of the default judgment. The Respondent failed to return several medical documents and photographs which, although not necessary for the collection of the default judgement, belonged to the client and should have been returned. The Respondent claims that he had determined that the default judgment was not collectible. However, he never informed his client of this determination.

These findings establish that the Respondent failed to communicate with his client and failed to keep his client reasonably informed, in violation of Rule 1.4(a) of the *Rules of Professional Conduct.* The Respondent further violated Rule 1.16(d) by failing to surrender to the client papers and property to which the client was entitled.

We also find that in 1986 Respondent's marriage ended in divorce which left the Respondent visibly shaken. Prior, during and after the divorce, the Respondent consumed excessive alcohol and used cocaine. On January 17, 1989, the Respondent was admitted to the Freedom Alcoholic and

Drug Component of the Broadripple Counseling Center for counseling and treatment. He successfully completed the course in June, 1989.

 Respondent's conduct set out in the foregoing findings reveals a callous disregard for clients and their interests. But beyond the repeated acts of negligence, his failure to refund unearned fees and misappropriation of clients' funds adds a serious criminal element to the professional misconduct. Although there is no specific contention that Respondent's excessive use of alcohol and cocaine caused or contributed to his actions, we must, nonetheless, stress that the findings relative to his condition do not and cannot in any way diminish the gravity of this misconduct. As observed in our earlier Order of Disbarment, this Court must protect the public from unfit lawyers, whatever the cause of unfitness may be. *In re Campbell* (1989), Ind., 546 N.E.2d 821, *In re Powell* (1989), Ind., 526 N.E.2d 971. Assessment of the appropriate discipline involves an examination of the nature of the violation, the specific acts of the Respondent, this Court's responsibility to preserve the integrity of the Bar, and the risk to which the public will be subjected if the Respondent is permitted to continue in the profession. *In re Olsen* (1989), Ind., 547 N.E.2d 849; *In re Hampton* (1989), Ind., 533 N.E.2d 122; *In re Moerlein* (1988), Ind., 520 N.E.2d 1275. Upon such examination, this Court determined that disbarment was warranted under the circumstances of this case. The Respondent, Timothy P. O'Connor, is therefore, disbarred, effective March 14, 1990, the date of the Order of Disbarment.

Costs of this proceeding are assessed against the Respondent.

DeBRULER, J., not participating.