**In the Matter of Karen S. TRUEBLOOD.**

No. 45S00–9209–DI–672.

Supreme Court of Indiana.

April 8, 1994.

No appearance for respondent.

Charles M. Kidd, Indianapolis, for The Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

### PER CURIAM.

The Respondent, Karen S. Trueblood, was charged by a "Verified Complaint for Disciplinary Action" with four counts of professional misconduct, all involving neglect of clients and their interests. During the hearing stage of this matter before the hearing officer, the Respondent failed to comply with specifically ordered discovery requests, and the Commission moved to have her suspended pending her compliance. On June 18, 1993, this Court adopted the hearing officer's recommendation, granted the Commission's motion, and suspended Respondent from the practice of law pending her compliance with the hearing officer's order. She has not complied and remains suspended. This conduct is also the subject of the charges under Count III of this complaint.

Upon conclusion of this proceeding, which Respondent did not defend, the hearing officer filed his report on findings, conclusions and recommendations. The hearing officer incorporated therein, with the Commission's concurrence, a verified statement in mitigation given by Attorney William E. Davis, Respondent's former partner. We now adopt the hearing officer's findings which are as follow:

Karen S. Trueblood was admitted to the Indiana Bar on October 15, 1982. The first and third counts arise out of Respondent's representation of the estate of Eula Warner. In April of 1988, Richard and Cynthia Warner paid Respondent $250 to handle the estate of Eula Warner, their mother, who had died on February 11, 1988. In April of 1989, the Respondent had the Warners sign a Petition to Close Estate, but there was no further contact between Respondent and the Warners. The estate was never opened, and there is no record of the Eula Warner Estate in the Lake County Clerk's office where it should have been filed.

As part of the discovery in this disciplinary proceeding, the Commission sought to discover how Respondent handled the $250 retainer fee and other clients' assets and sent Respondent a subpoena, pursuant to Ind.Admission and Discipline Rule 23(9)(f), seeking the name and address of the financial institution holding Respondent's trust account and the account number. Respondent failed to comply, and the Commission sought and obtained from the hearing officer an order compelling Respondent to respond to the discovery request. Respondent failed to comply once again, and the hearing officer issued a rule to show cause why Respondent should not be suspended until such time as she complies. Upon Respondent's failure to appear at the show cause hearing, the hearing officer made findings and recommended to this Court that Respondent be suspended until such time as she complies with the discovery requests. As stated above, this

Court suspended Respondent, and she remains so suspended.

Under Count II, we find that in January of 1990, Respondent prepared the will of Charlie Lloyd Flynn. Flynn died on April 14, 1990, and Respondent opened the estate for probate but she failed to have the estate properly appraised. Hearing on the Personal Representative's final account was set for September 8, 1992. The hearing was continued indefinitely because Respondent had not produced proof of publication of the notice to the heirs and creditors and the notice of hearing on final account. Respondent was instructed by the presiding judge to produce proof of the publication of these notices. After September, 1992, Respondent stopped communicating with the heirs and failed to comply with their request for return of their file. As of May 21, 1993, Respondent had not complied with the court's directive to produce proof of publication of the notices and had not returned the file. Eventually, another attorney was retained to close the estate.

As to the charges under Count IV, we find that on October 20, 1990, Carolyn A. Wardrop retained Respondent to handle the Estate of Effie E. Kirkpatrick, Wardrop's deceased Godmother. On November 13, 1990, Respondent filed the necessary papers to open the estate and to have Wardrop appointed Personal Representative. In January 1991, Respondent assisted Wardrop in selling some real estate from the estate, but thereafter, ceased to act in the matter and to communicate with Wardrop. Wardrop attempted numerous times to contact Respondent but was unsuccessful in getting her to act or to explain the proceedings. In November of 1991, Wardrop retained another attorney who attempted repeatedly, but also unsuccessfully, to obtain the estate file from Respondent. Finally, on December 16, 1991, the estate file was turned over to the successor attorney.

The evidence is clear and convincing that Respondent repeatedly neglected her client's interests, failed to communicate with them, disregarded court orders, failed to comply with discovery requests and engaged in conduct prejudicial to the administration of justice. The foregoing findings establish that Respondent violated Ind.Professional Conduct Rules 1.2(a), 1.3, 1.4(a), 1.4(b), 1.16(d), 3.2, 8.1(b), and 8.4(d).

Respondent offered no defense nor did she make an appearance in this disciplinary proceeding. After the conclusion of the hearing, Respondent's former law partner, William E. Davis, tendered a verified statement, to which the Commission did not object. He spoke on Respondent's behalf not at Respondent's request, but in order to bring to our attention her deteriorated emotional and physical health brought on by marital difficulties and numerous serious emotional and physical problems, including surgery. While she was recovering from her surgery, Respondent's father became seriously ill, eventually undergoing brain surgery.

This string of misfortunes overwhelmed Respondent, a single parent of three children all under nine years of age. Attached to Davis's statement is a letter from Respondent's treating psychologist confirming the clinical diagnosis and providing a positive prognosis for recovery.

Davis further affirms that prior to this period of time, Respondent was a bright, vibrant, honest, generous and hard-working mother and lawyer. Prior to her illness, she worked tirelessly for the poor and homeless through her church and by providing *pro bono* services to individuals and community organizations. She served for two years on the Board of Directors for the Legal Services Corporation of Gary, Indiana, and Lake County Inter-faith Families Together, an interdenominational community service organization dealing with affordable housing. For eighteen months, she also served on the Governor's Housing Policy Commission for the State of Indiana.

We accept the foregoing statement as evidence of mitigation relating to Respondent's mental state during the period of misconduct and are grateful to Davis for supplying this information. This evidence is entitled to some weight as we assess the harm caused to Respondent's clients and the gravity of Respondent's breach of her professional duties.

This Court has an obligation to protect the public from unfit lawyers, whatever the cause of their unfitness may be. *Matter of Campbell* (1989), Ind., 546 N.E.2d 821. The hearing officer offered several recommendations, among them that Respondent remain suspended until such time as she is capable of resuming practice. Upon balancing the misconduct against the extensive evidence of a disability, we are persuaded the Respondent should be suspended from the practice of law for a period of time, but that, upon recovery, she should have an opportunity to prove her rehabilitation through the reinstatement process.

It is, therefore, ordered that Karen S. Trueblood is suspended from the practice of law for a period of not less than one (1) year, beginning June 18, 1993, the date of her temporary suspension.

Costs of this proceeding are assessed against the Respondent.